170 Cal.App.4th 678 (2009)
In re R.H., a Person Coming Under the Juvenile Court Law.
FRESNO COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent,
v.
R.H., Defendant and Appellant.
No. F055047.
Court of Appeals of California, Fifth District.
January 26, 2009.
*682 John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.
Janelle E. Kelley, Interim County Counsel, and William G. Smith, Deputy County Counsel, for Plaintiff and Respondent.

*683 OPINION
VARTABEDIAN, Acting P. J.
R.H. is the father of a 14-year-old child who was adjudged a juvenile dependent (Welf. & Inst. Code, § 360, subd. (d)) in 2000 and has been in out-of-home placement care ever since. Over the years, R.H. in propria persona has filed numerous notices of appeal and writ petitions in this court relating to his son's dependency. Of the decisions which are final, R.H. has not prevailed in a single appeal or writ proceeding. More specifically, in the preceding seven years and essentially since the child was placed in long-term foster care (Welf. & Inst. Code, § 366.26, subd. (b)), R.H. in propria persona has commenced at least 13 appeals or writ proceedings that have been finally determined adversely to him (Code Civ. Proc., § 391, subd. (b)(1)).[1]
The untold hours this court has expended in response to R.H.'s voluminous as well as meritless appeals and writs, not to mention the costs of record preparation and court-appointed appellant counsel, has led us to conclude R.H. is a vexatious litigant within the meaning of section 391, subdivision (b)(1) and should be subject to a prefiling order (§ 391.7).

PROCEDURAL AND FACTUAL HISTORY

Dependency Court Proceedings
The juvenile court exercised its dependency jurisdiction over R.H.'s son in 1999 after finding true an allegation that the child's mother failed to provide him with adequate food, clothing or shelter on account of her drug abuse. At the time, R.H. was incarcerated.
Shortly after R.H. was released from custody, Fresno County Department of Children and Family Services (department) alleged and the juvenile court found true that the child was at serious risk of physical harm because R.H. was unable to supervise, protect or provide adequate care or a safe home environment due to his extensive criminal history. The juvenile court also found the child was at risk of suffering serious emotional damage as a result of exposure to incidents of domestic violence between his parents.
At a disposition hearing in early 2000, the juvenile court removed the child from parental custody and placed him in foster care. Despite 12 months of court-ordered reunification services, R.H. was unable to reunify with the child. The juvenile court consequently terminated services in early 2001 and *684 eventually adopted a permanent plan of long-term foster care for the child. Meanwhile, in May 2001, the juvenile court terminated visits between R.H. and the child based on undisputed evidence that the child experienced problems after the visits and R.H. refused to follow visitation rules and court orders. The juvenile court has never reinstated visitation between R.H. and the child.
Since it first selected long-term foster care as the child's permanent plan, the juvenile court has conducted six-month status reviews of the child's dependency. (Welf. & Inst. Code, § 366.3, subd. (d) (status review hearing).) At these status review hearings, the juvenile court has found, based on uncontroverted evidence, that: there was a continuing necessity for the child's out-of-home placement; and neither parent had made progress toward alleviating and mitigating the causes of the child's removal. (Welf. & Inst. Code, § 366.3, subd. (e)(1), (7).)

Appeal and Writ Proceedings
R.H. in propria persona filed the pending appeal from a February 2008 order granting a continuance of a status review hearing. In the seven years preceding the filing of this appeal, R.H. in propria persona has filed 13 final and unsuccessful appeals and writ petitions, as summarized below.
1. R.H. in propria persona appealed the juvenile court's May 2001 order terminating visitation between appellant and the child. This court affirmed, finding no abuse of discretion. (In re R.H. (June 18, 2002, F038474) [nonpub. opn.].)
2. R.H. in propria persona filed an appeal from a July 2001 order granting a 30-day continuance of the child's permanency planning hearing (Welf. & Inst. Code, § 366.26). Court-appointed appellate counsel could not find an arguable issue to brief and thus did not file an opening brief. (In re Sade C. (1996) 13 Cal.4th 952 [55 Cal.Rptr.2d 771, 920 P.2d 716].) Although we granted R.H. 30 days' time to personally file a letter brief to raise a claim of error, he did not respond to our order.[2] This court in turn dismissed the appeal. (In re R.H., supra, F038552 (dissmissal order).)
3. R.H. in propria persona appealed from a May 2002 status review hearing. R.H. claimed his due process rights were violated and his trial *685 counsel had been ineffective at the hearing. This court affirmed, finding appellant was afforded his due process right to be heard at the May 2002 hearing and any statutory violation was harmless because R.H. could not show prejudice. Likewise, we concluded R.H.'s ineffective assistance of counsel claim was meritless. (In re R.H. (Jan. 31, 2003, F041152) [nonpub. opn.].)
4. Within a matter of days in early 2005, R.H. in propria persona filed two notices of appeal and a petition for writ of mandate arising out of the child's dependency. On the face of all three, R.H. sought to relitigate orders dating back years in the child's dependency as well as to challenge a January 2005 order denying his motion to disqualify a new attorney whom the court recently substituted in to represent R.H. This court summarily denied the petition for writ of mandate. (R.H. v. Superior Court, F047336 (denial order).)
5. With regard to the two notices of appeal R.H. in propria persona filed in early 2005, this court consolidated them and limited the scope of R.H.'s appeal to orders issued within 60 days of the two notices of appeal. (Cal. Rules of Court, former rule 37(d)(1), now rule 8.400(d)(1).) Thereafter, R.H. challenged the January 2005 denial of his motion to discharge his new attorney for an alleged conflict of interest. This court affirmed. (In re R.H. (Nov. 2, 2005, F047401) [nonpub. opn.].)
6. Meanwhile in August 2005 and during the pendency of his appeal in In re R.H., supra, F047401, R.H. in propria persona filed three additional notices of appeal and two notices of intent to file a writ. Once again, on the face of these notices of appeal and notices of intent, R.H. sought to relitigate orders dating back years in the child's dependency. This court deemed the various documents to constitute an appeal from juvenile court orders entered after hearings conducted on four dates in August 2005. Over the course of those hearing dates, the juvenile court granted a request by the mother's attorney to be relieved on conflict of interest grounds; twice granted R.H.'s requests for continuance of the court's status review hearing of the child's dependency; denied R.H.'s effort to launch a section 170.6 challenge; and denied R.H.'s latest Marsden motion to discharge his court-appointed counsel.[3]
On appeal, R.H. claimed the juvenile court erred in not relieving his trial counsel. He so argued by incorporating the arguments he made in his prior appeal, In re R.H., supra, F047401. We affirmed having determined our *686 unpublished opinion in F047401, which by then was final, adequately addressed R.H.'s arguments. (In re R.H. (Mar. 2, 2006, F048646) [nonpub. opn.].)
7. and 8. Regarding the two notices of intent R.H. in propria persona filed in August 2005, we concluded there was no basis for any writ proceeding under California Rules of Court, rule 39.1B and dismissed each. (R.H. v. Superior Court, F048713, F048720 (dismissal orders).)
9. R.H. in propria persona appealed from the continued status review hearing which the juvenile court conducted in October 2005. Notably, R.H. did not attend the hearing and court-appointed appellate counsel once more filed a Sade C. letter. When R.H. did not respond to our order extending him leave to personally file a letter brief, this court dismissed that appeal. (In re R.H., F049396 (dismissal order).)
10. R.H. in propria persona appealed from the child's next status review hearing conducted in February 2006. Court-appointed appellate counsel filed a Sade C. letter. Once again, R.H. did not respond to our order granting him leave. This in turn led to the dismissal of that appeal as well. (In re R.H., F050216, (dismissal order).)
11. R.H. in propria persona appealed from the next status review hearing conducted in August 2006. Court-appointed appellate counsel filed yet another Sade C. letter. This time, R.H. did file a letter brief. However, he did not raise any claim of arguable error by the trial court. Thus, we dismissed his appeal by opinion. (In re R.H. (Jan. 16, 2007, F051388) [nonpub. opn.].)
12. R.H. in propria persona appealed from the next status review hearing held in February 2007. He argued the juvenile court should have ordered supervised visits between him and the child as well as that the department did not provide him with a copy of its report in a timely fashion. We affirmed. Notably, the appellate record did not contain any petition to modify (Welf. & Inst. Code, § 388) the court's six-year-old no-visit order, let alone any evidence of changed circumstances and that the child's best interests would be advanced by modifying that order. (In re R.H. (Sept. 10, 2007, F052505) [nonpub. opn.].)
13. R.H. in propria persona appealed from the next status review hearing held in August 2007. Again, court-appointed appellate counsel filed a Sade C. letter. After time expired for R.H. to personally file a letter brief, he requested a continuance without any good cause showing. This court denied R.H. a continuance for lack of good cause shown and dismissed the appeal by order. (In re R.H., F053821 (dismissal order).)
*687 In the pending appeal, court-appointed appellate counsel once again could not find an arguable issue to brief and filed a Sade C. letter. R.H. has never responded to our order granting him leave to file his own brief.
In addition, during the pendency of this appeal, this court has affirmed the juvenile court in yet another of R.H.'s in propria persona appeals. (In re R.H. (June 10, 2008, F054546 [nonpub. opn.].) This was an appeal from the juvenile court's order following its November 2007 status review hearing.
Against this litigious backdrop, we gave R.H. and his court-appointed appellate attorney in the pending appeal notice of as well as the opportunity to brief, produce evidence, and be heard in oral argument on the question of vexatious litigant status. (Bravo v. Ismaj (2002) 99 Cal.App.4th 211, 225 [120 Cal.Rptr.2d 879] (Bravo); In re Luckett (1991) 232 Cal.App.3d 107, 108 [283 Cal.Rptr. 312] (Luckett).) Before summarizing the evidence R.H. presented by way of declaration, we observe that in the interim, R.H. in propria persona has initiated three additional appeals from juvenile court orders in the child's dependency. (In re R.H. (Nov. 18, 2008, F055432) [nonpub. opn.], F055774 (app. pending), F055876 (app. pending).)
In his declaration under penalty of perjury, R.H. stated throughout the dependency court proceedings his trial counsel had not communicated with him concerning the nature and effect of the juvenile court proceedings and had not explained the appellate process, whether he should appeal or what was a viable issue on appeal. Adding that he did not have the funds to hire an attorney, R.H. asserted the only way he could obtain legal advice about whether he had a potentially meritorious appeal was to file a notice of appeal and secure court-appointed appellate counsel. R.H. also claimed he acted reasonably in pursuing his belief that his trial counsel had a conflict of interest by filing the appeals in In re R.H., supra, F047401 and In re R.H., supra, F048646. R.H. further declared a lack of notice and monitored visits with his son have prompted him to seek appellate relief.
In particular, he believes the lack of monitored visitation constitutes legal error and that his attorney has not pursued visitation for him in the juvenile court. Under these circumstances, he claims to "have a good-faith belief that there are ongoing errors occur[r]ing in the trial court which probably will justify me seeking appellate relief in the future."
While R.H. claims a primary concern that his attorney has a conflict of interest, not only the juvenile court but this court has rejected that claim more than once. To the extent he professes concern over a lack of notice and the lack of visitation, the record over all these years simply does not support such concerns.

*688 DISCUSSION

I. Vexatious Litigant Law

California's vexatious litigant law dates back to the early 1960's when the appellate court in Stafford v. Russell (1962) 201 Cal.App.2d 719, 722 [20 Cal.Rptr. 112] suggested the study of vexatious litigation and the unreasonable burdens it places upon the courts. In response, the Legislature enacted sections 391 through 391.6 (Stats. 1963, ch. 1471, § 1, p. 3038) to address problems "created by the persistent and obsessive litigant, appearing in propria persona, who has constantly pending a number of groundless actions." (Com. on Administration of Justice, Rep. (1963) 38 Cal. St. B.J. 485, 489; Note, The California Vexatious Litigant Statute: A Viable Judicial Tool to Deny the Clever Obstructionists Access? (1998) 72 So.Cal. L.Rev. 275, 284-285.)
As originally enacted, section 391 defined terms used in the substantive provisions of the law. In particular, its definition of vexatious litigant included a "person" "(1) Who, in the immediately preceding seven-year period has commenced, prosecuted or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to him; or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing . . . ." (§ 391, former subd. (b)(1).)[4]
The balance of the original vexatious litigant law, sections 391.1 through 391.6, established procedures by which a defendant in a pending case could move to designate a plaintiff as a vexatious litigant and to require a vexatious litigant to furnish security under certain specified circumstances. Failure to produce the ordered security would result in dismissal of the litigation in the defendant's favor.
Since its enactment of the vexatious litigant law, the Legislature has expanded its reach. (Camerado Ins. Agency, Inc. v. Superior Court (1993) 12 Cal.App.4th 838, 843 [16 Cal.Rptr.2d 42].) Most notably, in 1990, the Legislature both broadened the definitions of terms used in the law (§ 391) as well as created an additional tool, known as a prefiling order (§ 391.7), by which courts may counter vexatious litigants' misuse of our justice system (Bravo, supra, 99 Cal.App.4th at p. 221). (Stats. 1990, ch. 621, § 3, p. 3072.)
*689 Currently, section 391 defines terms, used in the vexatious litigant law and relevant to our discussion, as follows:
"(a) `Litigation' means any civil action or proceeding, commenced, maintained or pending in any state or federal court.
"(b) `Vexatious litigant' means a person who does any of the following:
"(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.
"(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.
"(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.
"(4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence. [¶] . . . [¶]
"(d) `Plaintiff means the person who commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained, including an attorney at law acting in propria persona.
"(e) `Defendant' means a person (including corporation, association, partnership and firm or governmental entity) against whom a litigation is brought or maintained or sought to be brought or maintained."
Section 391.7, which requires in propria persona vexatious litigants to seek prior court approval before filing new actions, currently provides as follows:
"(a) In addition to any other relief provided in this title, the court may, on its own motion or the motion of any party, enter a prefiling order which *690 prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed. Disobedience of the order by a vexatious litigant may be punished as a contempt of court.
"(b) The presiding judge shall permit the filing of that litigation only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3.
"(c) The clerk may not file any litigation presented by a vexatious litigant subject to a prefiling order unless the vexatious litigant first obtains an order from the presiding judge permitting the filing. If the clerk mistakenly files the litigation without the order, any party may file with the clerk and serve on the plaintiff and other parties a notice stating that the plaintiff is a vexatious litigant subject to a prefiling order as set forth in subdivision (a). The filing of the notice shall automatically stay the litigation. The litigation shall be automatically dismissed unless the plaintiff within 10 days of the filing of that notice obtains an order from the presiding judge permitting the filing of the litigation as set forth in subdivision (b). If the presiding judge issues an order permitting the filing, the stay of the litigation shall remain in effect, and the defendants need not plead, until 10 days after the defendants are served with a copy of the order.
"(d) For purposes of this section, `litigation' includes any petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order.
"(e) The clerk of the court shall provide the Judicial Council a copy of any prefiling orders issued pursuant to subdivision (a). The Judicial Council shall maintain a record of vexatious litigants subject to those prefiling orders and shall annually disseminate a list of those persons to the clerks of the courts of this state."
(1) Section 391.7's prefiling order provisions are distinguishable in significant ways from the security provisions of sections 391.1 through 391.6. Unlike the security provisions which require a motion by "a defendant" (§ 391.1), section 391.7 authorizes a court "on its own motion or the motion of any party" to enter a prefiling order against a vexatious litigant (§ 391.7, subd. (a), italics added). Also, in contrast to the security provisions, the prefiling order operates beyond the pending case and affects a vexatious litigant's future filings in propria persona, by requiring permission be obtained first from the presiding judge. (§ 391.7, subd. (a); McColm v. Westwood *691 Park Assn. (1998) 62 Cal.App.4th 1211, 1216 [73 Cal.Rptr.2d 288] (McColm); see also Bravo, supra, 99 Cal.App.4th at p. 221.) Further, the presiding judge will grant such permission provided it appears the litigation has merit and has not been filed for the purposes of harassment or delay. (§ 391.7, subd. (b).) By comparison, a court considering a defendant's motion for security must determine in part that there is no reasonable probability the plaintiff will prevail in the pending litigation against the moving defendant. (§ 391.3.) Thus, while imposing limits on a vexatious litigant's future filings, section 391.7 provides a workable means by which a vexatious litigant may proceed with litigation. (Forrest v. Department of Corporations (2007) 150 Cal.App.4th 183, 195 [58 Cal.Rptr.3d 466] (Forrest).)
Over the years, appellate courts have reviewed challenges to the vexatious litigation law and trial court determinations of vexatious litigant status. (See cases cited in McColm, supra, 62 Cal.App.4th at p. 1214.) In the process, appellate courts have taken an expansive approach to the vexatious litigant law in much the same way as the Legislature. (See Forrest, supra, 150 Cal.App.4th at pp. 195-196; In re Natural Gas Antitrust Cases (2006) 137 Cal.App.4th 387, 396 [39 Cal.Rptr.3d 909]; Bravo, supra, 99 Cal.App.4th at p. 222; Camerado Ins. Agency, Inc. v. Superior Court, supra, 12 Cal.App.4th at pp. 840-845.)
(2) Appellate courts also have applied the vexatious litigant law to appeals and writ petitions filed in the Courts of Appeal. (McColm, supra, 62 Cal.App.4th at p. 1214.) McColm involved an appellant who had been declared a vexatious litigant in prior litigation and failed to post security imposed as a condition to proceeding with her appeal. (Id. at p. 1213.) She claimed, among other arguments, that the vexatious litigant law applied only to plaintiffs and defendants in trial courts. (Id. at pp. 1214, 1216.) McColm disagreed, holding an appellant or writ petitioner meets the definition of plaintiff in section 391 as such a person "certainly commences, institutes or attempts to maintain the litigation in [the appellate] court." (McColm, supra, 62 Cal.App.4th at pp. 1216-1217.)
Relevant to our discussion, appellate courts, at least in Luckett, supra, 232 Cal.App.3d 107 and In re Whitaker (1992) 6 Cal.App.4th 54 [8 Cal.Rptr.2d 249] (Whitaker), also have declared appellants vexatious litigants. In so doing, these courts have relied on a litigant's filings in the Courts of Appeal to determine the appellant to be a vexatious litigant under section 391, subdivision (b)(1) and/or (3). Thus, to the extent R.H. claims we lack precedent to declare him a vexatious litigant for the first time on appeal, we disagree under the authority of Luckett and Whittaker.
The Luckett court reviewed 43 separate appellate actions Luckett had filed with it. (Luckett, supra, 232 Cal.App.3d at p. 109.) The appellate court *692 concluded he repeatedly filed unmeritorious motions and engaged in frivolous tactics in those appellate actions and therefore determined Luckett was a vexatious litigant under section 391, subdivision (b)(3). (Luckett, supra, 232 Cal.App.3d at pp. 109-110.) Luckett was also the first instance in which an appellate court exercised the authority under section 391.7 to issue a prefiling order. (Whitaker, supra, 6 Cal.App.4th at p. 55; Luckett, supra, 232 Cal.App.3d at pp. 110-111.)
In determining its appellant was a vexatious litigant under section 391, subdivision (b)(1), the Whitaker court cited not only the excessive trial court actions Whitaker had filed but also the 35 writ and appeal proceedings he had filed. (Whitaker, supra, 6 Cal.App.4th at pp. 55-56.) The Whitaker court further observed such repeated misuse results in a useless diversion of the appellate court's attention and prejudices other appellate parties, many of whom wait years for resolution of bona fide disputes. Similarly, our appellate system and our state's taxpayers are damaged by what amounts to a waste of the appellate court's time and resources. (Id. at p. 57.)
As the McColm court later explained, although these appellate courts "have not articulated their reasons for applying the statute to appellate writs and appeals, their willingness to do so stems from the statute's broad definitions for the terms `litigation,' `plaintiff' and `defendant.'" (McColm, supra, 62 Cal.App.4th at p. 1215, italics added.)
(3) McColm observed throughout the vexatious litigant law, "`Litigation' means any civil action or proceeding, commenced, maintained or pending in any state or federal court." (§ 391, subd. (a).) "Manifestly, `any civil action or proceeding' includes any appeal or writ proceeding. Of course, `any state or federal court' includes the California Court of Appeal." (McColm, supra, 62 Cal.App.4th at p. 1216.) Accordingly, McColm determined: "`Litigation' for purposes of vexatious litigant requirements encompasses civil trials and special proceedings, but it is broader than that. It includes proceedings initiated in the Courts of Appeal by notice of appeal or by writ petitions other than habeas corpus or other criminal matters." (Id. at p. 1219.)
McColm further held: "The decision whether to allow the litigant to proceed will be made on an individual basis, taking into account such factors as the nature of the action below, the nature of the lower court's ruling, whether writ petition or appeal is the appropriate procedure for seeking review in the Court of Appeal, the litigant's claims of error and whether the litigant has demonstrated improper reasons for bringing the original litigation or for taking it to the next court level." (McColm, supra, 62 Cal.App.4th at p. 1217.)

*693 II. R.H. Is a Vexatious Litigant

(4) With these authorities in mind and given that the vexatious litigant law has been both broadly written and interpreted, we conclude R.H. meets the definition of a vexatious litigant under section 391, subdivision (b)(1). As detailed above, R.H. is a person who in propria persona has commenced, during the seven years preceding the filing of this appeal, 13 appeals and writ proceedings, all of which have been finally determined adversely to him. (§ 391, subd. (b)(1).) We note in this regard the definition of a vexatious litigant (§ 391, subd. (b)) is a "person," not a plaintiff, who does one of four things. In addition, five of R.H.'s matters were Sade C. appeals in which there was not even an arguable issue. (In re Sade C., supra, 13 Cal.4th 952.) Furthermore, R.H. in propria persona shall be subject to a prefiling order for future litigation, pursuant to section 391.7, other than an appeal from a criminal conviction or a petition for writ habeas corpus (In re Bittaker (1997) 55 Cal.App.4th 1004, 1012 [64 Cal.Rptr.2d 679]).
The decision whether to allow R.H. in propria persona to proceed with future litigation will be made on a case-by-case basis. Particularly, as to future appeals or writ petitions, that decision will take "into account such factors as the nature of the action below, the nature of the lower court's ruling, whether writ petition or appeal is the appropriate procedure for seeking review in the Court of Appeal, [R.H.]'s claims of error" (McColm, supra, 62 Cal.App.4th at p. 1217) and whether he has demonstrated improper reasons for bringing the appeal or writ petition.
R.H. disagrees with our determination. He raises a myriad of arguments, on statutory, constitutional, and policy grounds, in opposition to our declaring him a vexatious litigant and requiring a prefiling order before he proceeds with litigation. Having reviewed each as discussed below, we conclude they are meritless.

III. Appellant's Status As Defendant in the Underlying Proceeding

During the pendency of this appeal, the Fourth District, Division One, issued its opinion in Mahdavi v. Superior Court (2008) 166 Cal.App.4th 32 [82 Cal.Rptr.3d 121] (Mahdavi). Mahdavi, previously declared a vexatious litigant, was a defendant in an unlawful detainer action. When he did not prevail in the unlawful detainer action, he appealed the judgment to the appellate division of the superior court. The appellate division in turn ordered him to seek leave of the court to maintain his appeal pursuant to the prefiling provisions of section 391.7. After he failed to do so, the appellate division dismissed his appeal. (Mahdavi, supra, 166 Cal.App.4th at pp. 34-35.)
Mahdavi reversed and held an appellate court may not require a person, who has been determined to be a vexatious litigant, to seek leave of the court *694 before he may file an appeal in a case in which he is the defendant. (Mahdavi, supra, 166 Cal.App.4th at p. 37.) Citing Mahdavi, R.H. contends because he is a defendant in the child's dependency proceeding, he is not subject to the vexatious litigant law. We disagree.
Arguably, Mahdavi neither addresses nor resolves the issue before us. The underlying facts as well as the legal issue in Mahdavi are distinguishable from this case. The petitioner in Mahdavi, unlike R.H., previously had been declared a vexatious litigant and was subject to a prefiling order. The question was whether the prefiling order applied to his appeal arising out of a case in which he was the defendant. Here, the issue is whether to declare R.H. a vexatious litigant based on his numerous and unsuccessful appeals and writ petitions for purposes of issuing a prefiling order. However, assuming for the sake of R.H.'s argument Mahdavi is relevant to our discussion of whether R.H. is a vexatious litigant and subject to a prefiling order, we are not persuaded by it.
Mahdavi first discussed some of the vexatious litigant security provisions, specifically sections 391.1 through 391.4, focusing on references in these provisions to a "plaintiff." Mahdavi reasoned these particular provisions contemplate precluding a plaintiff from filing new litigation against a defendant. (Mahdavi, supra, 166 Cal.App.4th at pp. 38-40.) No doubt, these provisions make clear: it is a "defendant" who moves for an order requiring the "plaintiff" to furnish security (§ 391.1); the court must be able to find: the "plaintiff" is a vexatious litigant and there is no reasonable probability the "plaintiff" will prevail, before ordering the security (§ 391.3); and when security is not furnished, the litigation shall be dismissed as to the "defendant" for whose benefit the court ordered the "plaintiff" to furnish the security (§ 391.4).
As previously discussed, section 391.7 which authorizes a prefiling order is a separate and distinct remedy available to the courts in dealing with a vexatious litigant. In contrast to the language of the security provisions, the remedy of a prefiling order is not limited to a defendant seeking a prefiling order against a plaintiff. Section 391.7 authorizes "any party" to move for a prefiling order to prohibit a "vexatious litigant" from filing any new litigation. (§ 391.7, subd. (a).) Also, in contrast to the procedure for requiring security, section 391.7 authorizes a court, "on its own motion," to enter a prefiling order. Thus, we question Mahdavi's reliance on the language of the vexatious litigant security provisions in construing section 391.7 which authorizes the distinct remedy of a prefiling order.
Next, in Mahdavi's estimation, a defendant who appeals an adverse ruling is not filing new litigation or maintaining litigation. Rather, the individual is *695 attempting to undo the results of litigation that has been instituted against him or her. (Mahdave, supra, 166 Cal.App.4th at p. 41.) In our view, this conflicts with the McColm analysis (McColm, supra, 62 Cal.App.4th at pp. 1215-1217) which we find compelling.
Mahdavi recognized McColm's conclusion that "new litigation," as used in the prefiling order provision (§ 391.7, subd. (a)), included the filing of an appeal by a vexatious litigant (McColm, supra, 62 Cal.App.4th at pp. 1220-1221). Mahdavi also acknowledged McColm's earlier reasoning as to the broad language of the vexatious litigant law as well as its determinations that: an appellant should be considered a plaintiff for purposes of the statute; and an appellant or writ petitioner certainly commences, institutes or attempts to maintain the litigation in the appellate court (McColm, supra, 62 Cal.App.4th at pp. 1216-1217).
Nevertheless, Mahdavi concluded McColm should be read narrowly to hold a prefiling order applies to prohibit "a vexatious litigant plaintiff" from appealing rulings of the trial court without first seeking leave. (Mahdavi, supra, 166 Cal.App.4th at p. 41.) We respectfully disagree based on our analysis of the vexatious litigant law, as discussed in part I. above.
In our view, Mahdavi took too narrow a view of the vexatious litigant law and its purpose. For instance, according to Mahdavi, the appellant in McColm was "`maintaining' the litigation by filing an appeal." (Mahdavi, supra, 166 Cal.App.4th at p. 41.) It reasoned Mahdavi, in appealing from a ruling in a case he did not initiate, could not be said to be "`maintaining' the litigation." (Id. at p. 41.) However, this overlooks the vexatious litigant definition of "plaintiff" as "the person who commences, institutes or maintains a litigation" (§ 391, subd. (d), italics added), not to mention the broad definition of the term "litigation" (§ 391, subd. (a)).
Mahdavi also claimed a portion of McColm's discussion of the factors considered in deciding whether to grant permission supported its (Mahdavi's) narrow reading of McColm. (Mahdavi, supra, 166 Cal.App.4th at pp. 41-42.) Specifically, Mahdavi highlighted McColm's mention of "whether the litigant has demonstrated improper reasons for bringing the original litigation." (McColm, supra, 62 Cal.App.4th at p. 1217; see Mahdavi, supra, 166 Cal.App.4th at p. 42.) However, McColm did not stop there. Instead, the factor it identified for consideration was "whether the litigant has demonstrated improper reasons for bringing the original litigation or for taking it to the next court level." (McColm, supra, 62 Cal.App.4th at p. 1217, italics added.)
*696 Finally, Mahdavi claimed its holding was warranted because "the thrust of the [vexatious litigant law was] to protect defendants from continued and repeated unmeritorious lawsuits initiated by plaintiffs." (Mahdavi, supra, 166 Cal.App.4th at p. 42.) As discussed later in this opinion, we take the broader view of the vexatious litigant law's, and especially section 391.7's, purpose. It is one which also seeks to protect the court system and its resources as well as other litigants (In re Bittaker, supra, 55 Cal.App.4th at p. 1008; Wolfgram v. Wells Fargo Bank (1997) 53 Cal.App.4th 43, 48 [61 Cal.Rptr.2d 694] (Wolfgram)) while at the same time providing a workable means by which a vexatious litigant may proceed with litigation (Forrest, supra, 150 Cal.App.4th at p. 195).

IV. Statutory Interpretation

R.H. contends the vexatious litigant law does not apply to a dependency proceeding because (a) there is no Welfare and Institutions Code provision which specifically applies it to dependency cases and (b) section 391.7, subdivision (d) specifically states it applies to probate and family law proceedings but is silent about proceedings under the Welfare and Institutions Code. R.H. misses his mark with each of these arguments.
Preliminarily, we observe it is not our purpose to render dependency cases more susceptible to the application of the vexatious litigant law than any other civil proceeding. Rather, we address a much more narrow issue, that is whether R.H. is a vexatious litigant subject to a prefiling requirement based on the excessive number of meritless appeals and writ petitions he has filed in propria persona with this court. The fact that these appeals and writ petitions arise out of a dependency proceeding does render our analysis somewhat unique compared with earlier published opinions. Whether it would be appropriate and under what circumstances to apply the vexatious litigant law's requirements in other dependency proceedings or even as to other parents who repeatedly and unsuccessfully appeal rulings from the child's dependency is not before us.

A.
A line of older intermediate appellate decisions seems to suggest Civil Code and Code of Civil Procedure requirements do not apply to a juvenile dependency case unless the Welfare and Institutions Code so provides. (In re Jennifer R. (1993) 14 Cal.App.4th 704, 711 [17 Cal.Rptr.2d 759]; Jones T. v. Superior Court (1989) 215 Cal.App.3d 240, 245 [264 Cal.Rptr. 4]; In re *697 Angela R. (1989) 212 Cal.App.3d 257, 273 [260 Cal.Rptr. 612].) Even so, the appellate court in at least one of these decisions, alternatively considered whether application of a Civil Code or Code of Civil Procedure requirement would be inconsistent with the purposes of the juvenile court law. (See In re Jennifer R., supra, 14 Cal.App.4th at pp. 711-712.)
(5) The "better view is that application of a statute outside the Welfare and Institutions Code (and not expressly made applicable) is not necessarily barred from dependency proceedings. Courts should determine whether the statute at issue is consistent with the overall purposes of the dependency system." (In re Claudia E. (2008) 163 Cal.App.4th 627, 636 [77 Cal.Rptr.3d 722].) This is in line with the stated position of the California Supreme Court which is to consider whether application of a statute outside of the Welfare and Institutions Code would produce results inconsistent with the purpose of juvenile court law. (In re Chantal S. (1996) 13 Cal.4th 196, 207 [51 Cal.Rptr.2d 866, 913 P.2d 1075].) More recently in In re Josiah Z. (2005) 36 Cal.4th 664, 679 [31 Cal.Rptr.3d 472, 115 P.3d 1133], the court noted: "in the absence of a dispositive provision in the Welfare and Institutions Code, we may look to [other statutory] requirements for guidance. [Citation.]" R.H. neither acknowledges this evolution nor does he directly address its consequences here.
(6) Application of the vexatious litigant law to a parent, such as R.H., who abuses the appellate process, is not inconsistent with our state's body of dependency law. Dependency proceedings are part of a comprehensive statutory scheme geared toward expediency, largely to serve the dependent child's best interests. (In re Claudia E., supra, 163 Cal.App.4th at p. 635, citing In re Meranda P. (1997) 56 Cal.App.4th 1143, 1152 [65 Cal.Rptr.2d 913].) In the seven plus years that R.H. has filed the appeals and writ petitions summarized above, the underlying dependency case has been in that stage where the child's interests, in stability and permanency, outweigh the parent's interest in the child's custody and control. (In re Marilyn H. (1993) 5 Cal.4th 295, 306-310 [19 Cal.Rptr.2d 544, 851 P.2d 826].) We are not talking about appeals or writ petitions brought upon the juvenile court's disposition or while the case is in a reunification mode. To that point we readily acknowledge the child and parent share an interest in reuniting. Thereafter, however, the state has a compelling interest in providing stable, permanent homes for children who have been removed from parental custody and for whom reunification efforts with their parents have been unsuccessful. (Id. at p. 307.) The state's interest requires the court to concentrate its efforts, once reunification services have been terminated, on the child's placement and well-being, rather than on a parent's challenge to a custody order. (Ibid.) *698 Also, protracted litigation over the custody of a child may harm the child. (Adoption of Alexander S. (1988) 44 Cal.3d 857, 868 [245 Cal.Rptr. 1, 750 P.2d 778].) Further, there exists a legitimate fiscal and administrative interest in reducing the cost and the burden of dependency proceedings. (In re Sade C., supra, 13 Cal.4th at p. 990.)
In determining that R.H. is a vexatious litigant who should be subject to a prefiling order, we are not talking about parents of dependent children generally who appeal or seek extraordinary writ review of juvenile court decisions. The hallmark of R.H.'s appeals and writ petitions over the last seven years has been his obsessive attempts at groundless claims which have the effect of clogging the appellate system. (Wolfgram, supra, 53 Cal.App.4th at p. 48.) His appeals and writ petitions focus on R.H.'s self-interests as a litigant, not his interests as a parent let alone the child's interests. In not one of the 13 unsuccessful appeals or writ petitions R.H. has filed in the preceding seven years has he raised an issue regarding the merits of the child's continued dependency status: that is, the continuing necessity for the child's out-of-home placement, and the lack of any progress by either parent toward alleviating and mitigating the causes of the child's removal. While R.H. has twice argued in favor of visitation, the appellate records have been devoid of any evidence either contradicting the showing made in favor of terminating visits or supporting modification of the 2001 order terminating visits. Thus, we conclude application of the vexatious litigant law to R.H. under these circumstances is not inconsistent with the purpose of juvenile dependency law.

B.
R.H. also directs our attention to subdivision (d) of section 391.7, which creates the prefiling order remedy. It states: "For purposes of this section, `litigation' includes any petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order." (§ 391.7, subd. (d).)
(7) According to R.H., this language indicates the Legislature specifically intended dependency matters be excluded from vexatious litigant proceedings. He cites in this regard the principle of expressio unius est exclusio alterius or the expression of one thing in a statute ordinarily implies the exclusion of other things. (In re J. W. (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363].) In his view, if the Legislature intended the vexatious litigant law to apply to dependency cases, it would have listed the Welfare and Institutions Code in subdivision (d) of section 391.7.
*699 First and foremost, R.H. ignores the Legislature's use of the verb "includes" in section 391.7, subdivision (d). Such language suggests an expansion of the meaning of the term "litigation," already broadly defined in section 391, subdivision (a)"any civil action or proceeding, commenced, maintained or pending in any state or federal court"and in turn an expansion of the prefiling order's availability as a means of dealing with vexatious litigants.[5]
R.H. also overlooks the fact that the expressio unius est exclusio alterius principle of statutory construction is not applied invariably and without regard to other indicia of legislative intent. (In re J. W., supra, 29 Cal.4th at p. 209.) This rule of statutory construction is only a guide and will not be applied if it would defeat legislative intent or produce an absurd result. (People v. Rizo (2000) 22 Cal.4th 681, 687 [94 Cal.Rptr.2d 375, 996 P.2d 27].) The California Supreme Court has clarified courts do not apply the principle "`if its operation would contradict a discernible and contrary legislative intent'" (In re J. W., supra, 29 Cal.4th at p. 209, quoting People v. Anzalone (1999) 19 Cal.4th 1074, 1079 [81 Cal.Rptr.2d 315, 969 P.2d 160]) or result in absurd consequences (In re J. W., supra, 29 Cal.4th at p. 210). To follow R.H.'s argument and apply the expressio unius est exclusio alterius principle in this instance would both produce an absurd result and defeat legislative intent.
By R.H.'s reasoning, section 391.7, subdivision (d), would necessarily limit the applicability of a prefiling order, as a remedy against vexatious litigants, to any new petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order. In other words, taking R.H.'s approach to its logical end, the remedy of a prefiling order to combat vexatious litigants could only be used to prohibit a vexatious litigant from filing in propria persona any new petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order and not in any other kind of litigation. This is absurd given the history of the vexatious litigant law and the Legislature's efforts to broaden rather than retract its reach.
*700 In addition, a review of the legislative history underlying this 2002 amendment to section 391.7 reveals the Legislature merely sought to draw attention to the availability of a vexatious litigant determination as a remedy for relatives who were legal guardians and were subjected to repeated and unfounded attempts by parents to challenge a legal guardian's decisionmaking or even his or her continuing status as legal guardian. (Bill history of Assem. Bill. No. 1938 (2001-2002 Reg. Sess.), Stats. 2002, ch. 1118.) "Under existing law, parties to family law and probate law proceedings, as well as the court, may already use the vexatious litigant statutes if they so desire. [¶] The intent of this bill, according to the author and the proponents, is to point the way to the vexatious litigant statutes to the parties engaged in these proceedings and to the court, as a tool to discourage repeated motions by parents to regain custody of their children when there are no changed circumstances to justify a different result." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1938 (2001-2002 Reg. Sess.) as amended Aug. 5, 2002, p. 6.)

V. Right to Counsel

R.H. also contends our prefiling order will deny him his right to counsel on appeal (In re Sade C., supra, 13 Cal.4th at p. 984 [an indigent parent has a right to the assistance of appointed appellate counsel in his appeal from a state-obtained decision adversely affecting child custody or parental status under California statutes and rules of court].) According to R.H., appellate counsel's assistance is necessary to properly frame his (R.H.'s) appellate issues.
(8) An appellant's right to court-appointed appellate counsel presumes an entitlement to appeal. By his actions as a vexatious litigant, R.H. has proven himself not entitled to such a presumption. He has abused time and again his right to appeal. However, as previously discussed, a prefiling order does not prevent an appeal; it provides a means by which a vexatious litigant may nonetheless pursue litigation. (Forrest, supra, 150 Cal.App.4th at p. 195.) Having prepared a notice of appeal in propria persona, R.H. presumably knows what it is he is challenging. If he will complete an application (see appen. A, post) identifying the challenged order or decision and the presiding justice determines it has merit, in that it is at least arguable, and is not brought for the purpose of harassment or delay, R.H.'s notice of appeal will be filed and appellate counsel will be appointed.
Also, R.H. ignores the fact that he has court-appointed trial counsel who not only can advise him regarding whether he may have an arguable issue to appeal but can file the notice of appeal and bypass the prefiling order requirement altogether. While R.H. claims his attorney will not communicate *701 with him, we are not so persuaded. The record supports a conclusion rather that it is R.H. who does not care to listen to what his trial attorney has to say.

VI. Attack Under the California Constitution

R.H. claims application of the vexatious litigant law to an appeal means the presiding justice alone will pass on the merits of an appeal and without opinion and therefore violates the state's Constitution in two respects. We disagree.
First, R.H. cites article VI, section 3 of the California Constitution which states in part: "The Legislature shall divide the State into districts each containing a court of appeal with one or more divisions. Each division consists of a presiding justice and 2 or more associate justices. It has the power of a court of appeal and shall conduct itself as a 3-judge court. Concurrence of 2 judges present at the argument is necessary for a judgment." (Italics added.)
Second, R.H. cites article VI, section 14 of the California Constitution which states in part: "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated."
Although numerous constitutional challenges against the vexatious litigant law have been raised over the years, none of the published decisions ruling on such challenges have addressed a contention such as R.H.'s. This may well be because his premiseapplication of the vexatious litigant law to an appeal means the presiding justice alone will pass on the merits of an appeal and without opinionis flawed.
(9) Section 391.7, subdivision (b) provides in part "[t]he presiding judge shall permit the filing of [new litigation in the courts of this state by a vexatious litigant in propria persona] only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay." Thus, by section 391.7's own terms, the presiding justice in determining whether to permit the appeal to proceed does not pass on its merits. The presiding justice merely determines if there is an issue to review on appeal. (McColm, supra, 62 Cal.App.4th at p. 1217.) Once again, as the McColm court explained, "The decision whether to allow the litigant to proceed will be made on an individual basis, taking into account such factors as the nature of the action below, the nature of the lower court's ruling, whether writ petition or appeal *702 is the appropriate procedure for seeking review in the Court of Appeal, the litigant's claims of error and whether the litigant has demonstrated improper reasons for bringing the original litigation or for taking it to the next court level." (McColm, supra, 62 Cal.App.4th at p. 1217.)

VII. Attack Under the Federal Constitution

R.H. also argues that to require him to first obtain leave of our presiding justice before filing any new appeals or writ petitions in this court arising out of the child's dependency violates his First Amendment right to petition the government for redress of grievance and his Fourteenth Amendment right to due process under the United States Constitution. According to R.H., his act of filing a notice of appeal in the child's dependency action is an exercise of his First Amendment right to petition the government for redress of his grievances and that to require him, pursuant to section 391.7, to obtain leave to file future appeals in this court is unconstitutional because the requirement is not narrowly drawn. As to his alternative claim, he does not articulate how a prefiling order requirement would violate his due process rights. At most, he claims he is entitled to greater due process protection as an appellant in a case involving parental rights. Therefore, in his view, application of the vexatious litigant law to him must pass strict scrutiny.

A.
The issue of whether section 391.7 violates an individual's right to petition under the First Amendment has been exhaustively addressed and rejected in Wolfgram, supra, 53 Cal.App.4th at pages 50-59. We agree with the Third District's analysis in Wolfgram.
(10) No doubt, any impairment of the right to petition must be narrowly drawn. (Wolfgram, supra, 53 Cal.App.4th at pp. 55-57.) However, the right to petition does not confer the right to clog the court system and impair everyone else's right to seek justice. (Wolfgram, supra, 53 Cal.App.4th at p. 56.) Baseless litigation is not immunized by the First Amendment right to petition. (Wolfgram, supra, 53 Cal.App.4th at p. 57, citing Bill Johnson's Restaurants, Inc. v. NLRB (1983) 461 U.S. 731, 743 [76 L.Ed.2d 277, 103 S.Ct. 2161].) "The prefiling order component of the vexatious litigant statue is a necessary method of curbing those for whom litigation has become a game.... To the extent it keeps vexatious litigants from clogging courts, it is closer to `licensing or permit systems which are administered pursuant to narrowly drawn, reasonable and definite standards' which represent `government's only practical means of managing competing uses of public facilities[.]' [Citation.] When a vexatious litigant knocks on the courthouse door with a colorable claim, he may enter." (Wolfgram, supra, 53 Cal.App.4th at p. 60.)
*703 R.H. contends we should not rely on Wolfgram in addressing his right to petition challenge because Wolfgram arose out of "`regular' civil action" and not a dependency case. We disagree. R.H. fails to cite and we know of no authority for his assumption of some kind of sliding scale for courts to apply in evaluating a First Amendment issue such that one person may be entitled to more First Amendment protection than another. It may simply be that R.H. is confusing his First Amendment argument with his due process claim.
In any event, to the extent R.H. contends the remedy we intend to impose is not narrowly drawn, we disagree. He argues the usual purpose served by the vexatious litigant law is to protect a defendant from expending time and money responding to baseless lawsuits. That concern is not present, according to R.H. in one of his appeals, because the respondent need take no action if there is no arguable issue and appellate counsel files a Sade C. letter. Alternatively, he claims we can simply dismiss his appeal when appellate counsel files a Sade C. letter.
First, we take exception to appellant's constrained interpretation of the vexatious litigant law. As we have previously discussed, the vexatious litigant law exists not only to help defendants but to curb misuse of the court system, unreasonably burdened by obsessive litigants pursuing groundless litigation. Such repeated misuse results in a useless diversion of the appellate court's attention and prejudices other appellate parties, many of whom wait years for resolution of bona fide disputes. Similarly, our appellate system and our state's taxpayers are damaged by what amounts to a waste of the appellate court's time and resources. (Whitaker, supra, 6 Cal.App.4th at p. 57.) The abuse is exacerbated in R.H.'s case due to the fact that appeals from dependency court rulings have precedence over all other cases in the appellate court. (Welf. & Inst. Code, § 395, subd. (a).)
Second, we question R.H.'s assertion that appellate counsel's filing of a Sade C. letter somehow remedies the problem his appeals create and in a more narrowly tailored way than a prefiling order would. The filing of a Sade C. letter is neither responsive to nor a remedy for the vexatious litigant. It is simply the means by which court-appointed appellate counsel advises the appellate court that, having reviewed the record, the attorney will not be filing an opening brief because that attorney cannot find an arguable issue.
Third, R.H. ignores this court's practice of which he is well aware. We do not simply dismiss an appeal when court-appointed appellate counsel finds no arguable issue. Instead, we give the appellant/parent in propria persona the opportunity to brief and raise an arguable issue. If the parent files a brief, we review the claims made against the record and the law and issue a full opinion. It is only when the parent does not file a brief that we outright *704 dismiss. R.H.'s argument also ignores the considerable effort as well as public expense involved: in the trial court with record preparation, in our court with processing the appeal, and in the appointment of appellate counsel and payment for that attorney's services.

B.
As previously noted, R.H. fails to explain how a prefiling order violates his due process rights. For that omission alone, he is not entitled to our consideration of his undeveloped argument. (People v. Wharton (1991) 53 Cal.3d 522, 563 [280 Cal.Rptr. 631, 809 P.2d 290].) To the extent he assumes a prefiling order violates due process because in his mind it denies him his right to counsel on appeal, we previously have concluded our prefiling order does not deny him his right to counsel. (See Discussion, pt. V.) Neither section 391.7 nor our prefiling order violates due process because R.H. as the vexatious litigant has the right to seek the permission of the presiding judge or justice to file future litigation. (§ 391.7, subd. (a); Wolfgram, supra, 53 Cal.App.4th at pp. 60-61.)
In an abundance of caution, we nonetheless have reviewed R.H.'s specific claim that he is entitled to greater due process protection than other vexatious litigants, namely strict scrutiny of the prefiling order, on a theory that his rights as a parent are at stake. We are not persuaded because R.H. is not a parent whose rights have been terminated and therefore our prefiling order is not subject to strict scrutiny.
R.H. does cite M. L. B. v. S. L. J. (1996) 519 U.S. 102, 116-128 [136 L.Ed.2d 473, 117 S.Ct. 555] among other United States Supreme Court decisions, for the proposition that appellants in cases involving parental rights are entitled to greater protection than other litigants as a matter of due process. In M. L. B. v. S. L. J., supra, 519 U.S. at page 107, the Supreme Court considered the question of whether a state, consistent with due process and equal protection, may condition appeals from trial court decrees terminating parental rights on the affected parent's ability to pay record preparation fees. The Supreme Court held the state court could not deny the parent appellate review because of her poverty. (Ibid.)
(11) R.H. overlooks the point of the Supreme Court's pronouncements, namely access to judicial proceedings forever terminating parental rights cannot turn on ability to pay or be examined for rationality. (M. L. B. v. S. L. J., supra, 519 U.S. at pp. 123-124.) In so doing, the Supreme Court distinguished a parental rights termination proceeding from other custody determinations. "The object of the proceeding is `not simply to infringe upon [the parent's] interest,' the Court recognized, `but to end it'...." (M. L. B. v. *705 S. L. J., supra, 519 U.S. at p. 118.) "In contrast to loss of custody, which does not sever the parent-child bond, parental status termination is `irretrievabl[y] destructi[ve]' of the most fundamental family relationship." (M. L. B. v. S. L. J., supra, 519 U.S. at p. 121, quoting Santosky v. Kramer (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 102 S.Ct. 1388].)

VIII. Policy Considerations

Even though the vexatious litigant law can be applied to R.H. as a matter of statutory interpretation, case law and constitutional law, he nonetheless urges us not to do so on policy grounds. Having considered those grounds, we are not persuaded by them.

A.
R.H. claims that a prefiling order will create more work rather than less for this court when he attempts to file future notices of appeal. He theorizes that an appellate record will have to be prepared and reviewed before the presiding justice can determine if a new appeal has merit. He compares this to what would happen in the case of a Sade C. appeal. In his view, a prefiling order is also impractical, drawing an analogy to In re Bittaker, supra, 55 Cal.App.4th at page 1011 in which the appellate court ruled to include a habeas corpus petition within the scope of a prefiling order would be cumbersome and impractical. He further argues if he does not obtain the presiding justice's permission to file, he would presumably seek relief in the California Supreme Court which in turn would create more work.
We remind R.H. that a prefiling order only pertains to litigation, including appeals, he commences in propria persona. (§ 391.7, subd. (a).) Given that he has court-appointed trial counsel, he should consult with his attorney to evaluate whether he has an arguable issue to raise and, if so, he can direct his attorney to file the notice of appeal on his behalf. In this manner, R.H. can properly bypass the prefiling order. If there is an arguable issue to raise but for whatever reason trial counsel does not file the notice of appeal on R.H.'s behalf, a prefiling order will not limit his access to the court. Rather, the simple showing of an arguable issue will suffice for permission to file.
As previously discussed, whether to grant permission to file is a determination to be made on a case-by-case basis. (McColm, supra, 62 Cal.App.4th at p. 1217.) Thus, we do not agree with R.H.'s premise that in every future appeal of his, we must have the record. The pending appeal is a good example. R.H. appealed from an order granting a continuance of a status review hearing. That was the sum total of the court's order. If R.H. could *706 have made an arguable claim that the court erroneously granted the continuance and prejudiced him as a result, permission could be granted to file and record preparation would then proceed. Thus, we fail to discern how a prefiling order is impractical, let alone would take more time and effort than if we continued the status quo. We also remind R.H. that a Sade C. appeal is not a solution to his vexatiousness.

B.
According to R.H., appeals and writ petitions arising out of dependency cases are uniquely unsuited for vexatious litigant treatment. He theorizes that if a parent in propria persona appealed the juvenile court's disposition, six-month review and 12-month review, filed a writ petition after the 18-month review at which the court sets a permanency planning hearing (Welf. & Inst. Code, § 366.26), and appealed thereafter from an order terminating parental rights, that parent could be declared a vexatious litigant if he or she lost in each of those appellate proceeding.
We hasten to point out that a parent whose child is subject to juvenile dependency proceedings may seek the advice of an attorney regarding appellate and writ remedies and may also seek the attorney's assistance in filing a notice of appeal on the parent's behalf. In this way, the vexatious litigant law is inapplicable unless it is established the attorney has not acted as a neutral assessor of the client's claims. (In re Shieh (1993) 17 Cal.App.4th 1154, 1167 [21 Cal.Rptr.2d 886].) We also note indigent parents of children who are subject to juvenile dependency proceedings are entitled to court-appointed trial counsel. (See Welf. & Inst. Code, § 317.) It is this court's experience that in most instances, trial counsel in dependency cases file the notice of appeal on behalf of their clients, thus taking those appeals outside of the scope of the vexatious litigant law.
Finally, we reiterate our holding that R.H. is a vexatious litigant within the meaning of section 391, subdivision (b)(1), and should be subject to a prefiling order as to his future filings in propria persona. Contrary to R.H.'s assumption, we have not held generally parents who appeal from rulings in their child's dependency case can be adjudicated vexatious litigants.
Our holding is specifically limited to the circumstances which R.H. presents. We are not dealing with just any parent who appeals or seeks writ relief from a dependency court decision. Here, we have a parent who in propria persona and, despite the fact that he has court-appointed trial counsel, has in the last seven years filed an inordinate number of appeals and writ petitions. None of those appeals or writ petitions during the seven-year timeframe relate to the initial decision-making of a dependency court, i.e., the *707 court's exercise of jurisdiction, disposition, grant of reunification services, review while the case is in reunification, or its determination to set a permanency planning hearing. Instead, he has challenged the juvenile court's status review (Welf. & Inst. Code, § 366.3) of the child's dependency in its postpermanency phase over the past seven years. At this stage, the court's focus is on the child's need for permanency and stability, not the parent's purported needs. Furthermore, not only have all 13 appeals and writs been determined adversely to R.H., in five of those cases there was not even an arguable issue. Even were we to limit our analysis to those five cases, they would still warrant a determination that R.H. is a vexatious litigant and should be subject to a prefiling order.

DISPOSITION
The court finds that R.H. is a vexatious litigant within the meaning of section 391, subdivision (b)(1). The clerk/administrator of this court is directed to provide a copy of this opinion and our prefiling order to the Judicial Council. (Code Civ. Proc., § 391.7, subd. (e).) Copies shall also be mailed to the presiding judge and the Clerk of the Fresno County Superior Court. The appeal is otherwise dismissed as abandoned.
Henceforth, pursuant to section 391.7, R.H. may not file "any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." (§ 391.7, subd. (a).) Disobedience of this order may be punished as a contempt of court. (Ibid.) Further, the presiding judge shall permit the filing of such litigation only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay. (§ 391.7, subd. (b).)
As to R.H.'s future attempts in propria persona to file a notice of appeal or writ petition with this court, the permission R.H. must seek for leave to file an appeal or writ petition is that of this court's presiding justice. In the case of a notice of appeal submitted by R.H. in propria persona for possible review by this court, we direct that the clerk of the superior court shall mark it "received" and forward it to this court, along with a copy of the order referenced in the notice of appeal. Thereafter, the court clerk/administrator of this court shall receive but not file the notice of appeal until R.H. in propria persona receives a prefiling order from this court's presiding justice. Similarly, if R.H. in propria persona submits a writ petition to this court, the court clerk/administrator of this court shall receive but not file the writ petition until R.H. in propria persona receives a prefiling order from this court's presiding justice.
*708 Upon receipt of the notice of appeal or writ petition, this court will notify R.H., by mail, of our receipt and give him 30 days to apply for such permission. Included for the vexatious litigant's use will be a copy of "APPLICATION FOR PERMISSION TO APPEAL OR TO FILE WRIT PETITION" developed by this court. (See appen. A, post.) Under penalty of perjury, R.H., in propria persona, like any other vexatious litigant, must provide facts and legal authority telling the court with specificity why his appeal or petition has merit. If the showing is insufficient, or if R.H. fails to request permission to file in the time provided, the appeal or petition will not be filed and the case number will be closed.
Cornell, J., and Kane, J., concurred.

*709 APPENDIX A

APPLICATION FOR PERMISSION TO APPEAL OR TO FILE WRIT PETITION
To: Presiding Justice Deadline:
Court of Appeal, Fifth Appellate District
2424 Ventura Street
Fresno, CA 93721
Name of Applicant: _________________________________________________
Name of Opposing Party(s): _________________________________________
Court of Appeal Number, if assigned: _______________________________
Judgment/Order(s) Challenged: _______________________________________

IN THREE PAGES OR LESS
1. Describe the nature of the superior court action and judgment or order under review.
2. Explain why the appeal/writ has merit. [Note: In order to show that the petition has merit, you must describe your opponent's position on the matter as well as your own and the trial court ruling on the matter at issue.]
I declare under penalty of perjury that the information I have provided on this form is true and (1) I believe that my appeal or writ petition has merit and (2) I am not seeking to file it for purposes of harassment or delay.
Date: ______________ Signature: __________________________
NOTES
[1] All further references are to the Code of Civil Procedure unless otherwise indicated. In addition, by prior order, we have taken judicial notice of our files in each of these matters.
[2] It is this court's policy, once court-appointed appellate counsel advises no opening brief will be forthcoming pursuant to In re Sade C., supra, 13 Cal.4th 952 (Sade C. letter), to grant the appellant a 30-day extension of time within which to personally file a brief which may be in letter form. If the appellant files such a letter brief, we then review the matter and issue our opinion. In our order, we also advise that if the appellant does not file a brief, the appeal may be dismissed.
[3] People v. Marsden (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44].
[4] At the time, section 391, subdivision (a) defined litigation as any civil action or proceeding, commenced, maintained or pending in any court of this state.
[5] The Legislative Counsel's Digest for this 2002 amendment of section 391.7 stated:

"Existing law authorizes a defendant in any litigation pending in any court of this state, at any time until final judgment is entered, to move for a court order requiring the plaintiff to furnish security as a vexatious litigant, as defined. Existing law requires the litigation to be dismissed as to the defendant for whose benefit the security was ordered, if it is not furnished.
"This bill would specifically extend these provisions to any petition, application, or motion other than a discovery motion, in a proceeding under the Family Code or Probate Code, for any order." (Stats. 2002, ch. 1118.)