Filed 7/27/15  Roman v. Kim CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| GABRIEL L. ROMAN, | B249160 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC058421) |
| v. | |
| SARA H. KIM et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County. Donna Fields Goldstein, Judge.  Affirmed in part and reversed in part.

Gabriel L. Roman, in pro. per., for Plaintiff and Appellant.

Peterson Bradford Burkwitz, Avi Burkwitz and Gil Burkwitz for Defendant and Respondent Sara H. Kim.

Schmid & Voiles, Denise H. Greer, Rodney G. Tomlinson and Adam R. James for Defendant and Respondent Armen A. Kassabian.

Ryan Datomi, Richard J. Ryan, Jeffrey T. Whitney and Dawn Cushman for Defendant and Respondent Glendale Adventist Medical Center.

_____

Plaintiff Gabriel Roman filed a medical malpractice action against defendants Sara H. Kim, M.D., Armen A. Kassabian, M.D., and Glendale Adventist Medical Center (the Medical Center). Roman represented himself in the lawsuit. The trial court entered a judgment of dismissal in favor of Dr. Kim after finding Roman to be a vexatious litigant (see Code Civ. Proc., § 391 et seq.), and Roman elected not to post the designated security. The court entered separate summary judgments in favor of Dr. Kassabian and the Medical Center. (Code Civ. Proc. § 437c.) Roman filed a collective appeal challenging all three judgments; he remains self-represented on appeal. We affirm the judgment in favor of the Medical Center. We reverse the judgment in favor of Dr. Kim as being prematurely granted. We reverse the summary judgment in favor of Dr. Kassabian, but find summary adjudication of issues should have been granted, as we discuss more fully below.

## FACTS

In accord with the long-recognized principle that the issues to be addressed on a motion for summary judgment (MSJ) are "framed by the pleadings" (see, e.g., *Turner v Anheuser-Busch, Inc*. (1994) 7 Cal.4th 1238, 1251), Roman's complaint alleged the following facts. In February 2011, Roman was diagnosed with prostate cancer by his urologist, Dr. Kassabian. He referred Roman to Dr. Kim, a radiation oncologist affiliated with the Medical Center. Dr. Kim informed Roman of a clinical study treatment known as "CyberKnife Radiosurgery," telling him that it would not have the side effects commonly associated with traditional radiation treatments. Dr. Kim told Roman that the CyberKnife treatment would involve placing "gold fiducials," or small "seeds" in Roman's prostate, a procedure that would be performed by Dr. Kassabian. Roman agreed to the CyberKnife treatment, and signed a written consent form for the treatment.[1]

---

[1]    The language of the consent form is discussed in more detail below.

2

On March 7, 2011, Dr. Kassabian performed the procedure to place fiducials into Roman's prostate. Roman alleged that he received "no anesthesia" during the procedure, and that the procedure involved the insertion of "something very thick and big into [his] rectum," causing him to suffer "excruciating pain." Roman alleged that nobody told him that "there would be no anesthesia" for the procedure or that he would "feel everything" and suffer extreme pain. Roman alleged that if he had known ahead of time that he would feel everything and suffer extreme pain, then he would not have agreed to the procedure.

On March 17, 2011, Dr. Kim informed Roman that the fiducials were not placed correctly in his prostate, and that he would need to return to Dr. Kassabian to have more fiducials placed in his prostate. During the course of a series of ensuing discussions in March 2011, Dr. Kim refused to continue treating Roman after he asked her if she had malpractice insurance. Moreover, Dr. Kim told Roman that he no longer qualified for the clinical study in light of all of the circumstances. Roman thereafter decided to, and did, further treatment at another medical facility.

In May 2012, Roman filed a complaint for damages naming Drs. Kassabian and Kim, and the Medical Center as defendants. The complaint alleged a joint cause of action for medical malpractice against the two doctors, a cause of action for medical malpractice "via agency" against the Medical Center, and a joint cause of action for failure to obtain an informed consent against the two doctors related to the procedure performed to place the fiducials in his prostate. As to the medical malpractice claim, Roman alleged that Dr. Kassabian "had a legal duty to perform the procedure [to] implant . . . the gold fiducials . . . under at least local anesthesia . . . ." Roman alleged that the breach of the duty of care caused him damages in that he had "to go through unnecessary pain and suffering . . . ." Further as to Dr. Kassabian, Roman alleged that the doctor "placed the fiducials into the wrong place . . . ." Roman alleged that Dr. Kim had a legal "duty to insist" that Dr. Kassabian performed the implant procedure under anesthesia. Her failure to do so caused injury in that he suffered "unnecessary pain and

3

suffering." Further as to Dr. Kim, Roman alleged that she gave "directions" to Dr. Kassabian "as to where to place [the] gold fiducials."

Dr. Kim filed a motion for summary judgment or, in the alternative, a motion for summary adjudication of issues as to Roman's two causes of action against the doctor. Dr. Kim's motion was supported by expert evidence showing that her treatment of Roman met the standard of care, and that Roman's claims against the doctor were barred by the applicable statute of limitations. As to Roman's cause of action for lack of informed consent, Dr. Kim argued that the evidence showed Roman did give consent to the treatment he had received.

Dr. Kassabian also filed a motion for summary judgment, or, in the alternative, a motion for summary adjudication of issues as to Roman's two causes of action against the doctor. The motion was supported by expert evidence showing that Dr. Kassabian's treatment of Roman met the standard of care. The expert opined that Dr. Kassabian properly placed the fiducials in Roman's prostate during a procedure under local anesthesia, but they had "migrated," a complication unrelated to the doctor's treatment. As to Roman's cause of action for lack of informed consent, Dr. Kassabian argued that the evidence showed that Roman had "no viable claim."

The Medical Center also filed a motion for summary judgment. It presented evidence showing that Dr. Kim was not an agent of the hospital. Further, the Medical Center submitted expert evidence showing that, assuming agency, Dr. Kim's treatment met the standard of care. The Medical Center argued that without evidence of Dr. Kim's negligence, there could be no liability on the part of the hospital. Finally, the Medical Center argued the evidence showed Roman's claims were barred by the applicable statute of limitations.

By a series of trial court orders, the motions by Drs. Kim and Kassabian were eventually continued. During the intervening time period, Dr. Kim filed a renewed motion to declare Roman a vexatious litigant.[2] Roman's opposition, along with considerable further papers, were filed thereafter.

After a hearing, the trial court found that Roman had five cases finally determined against him in the past seven years; the court took under submission whether Roman was likely to succeed on his claims against Dr. Kim at trial. Thereafter, the court entered an order declaring Roman a vexatious litigant and ordering him to post a $10,000 bond in order to continue his case against Dr. Kim. The court also entered a pre-filing order against Roman.

Roman filed an ex parte motion asking for the hearings on the defendant doctors' summary judgment motions to be continued because he had not been provided with discovery he had requested. The trial court denied a continuance.

Roman filed a motion for reconsideration of the trial court's order declaring him to be a vexatious litigant as to Dr. Kim. Again, opposition and further papers were thereafter filed. The trial court entered a minute order denying Roman's motion for reconsideration, and also indicating that Roman's action against Dr. Kim was subject to dismissal for his failure to post the $10,000 bond which the court had ordered.

Roman's opposition to the Medical Center's MSJ argued that the res ipsa loquitur doctrine applied to Roman's medical malpractice claim as to Dr. Kim, the alleged agent of the Medical Center. He also requested a continuance of the hearing in order to obtain further discovery from the hospital regarding Dr. Kim's agency.

Roman's opposition to Dr. Kassabian's MSJ argued that the res ipsa loquitur doctrine applied to his case, and that this meant he did not need an expert witness's declaration to oppose Dr. Kassabian's motion. Roman supported his opposition with a personal declaration in which he testified, in accord with the allegations in his complaint, as follows: "I received no anesthesia before the procedure [performed by

---

[2]      Dr. Kim's original motion was denied in August 2012.

5

Dr. Kassabian]. . . . I felt everything, as Dr. Kassabian . . . inserted something very thick and big into my rectum then I felt stabs and poking needles going through my inside organs. Dr. Kassabian continued on, besides my moaning in pain as it was such an excruciating pain that I was experiencing . . . ."

On May 15, 2013, the trial court granted the Medical Center's MSJ, ruling that there were no disputed facts on the issue of whether Dr. Kim was an agent of the Medical Center, and that Roman's claim against the hospital was barred by the statute of limitations.

On May 22, 2013, the trial court granted Dr. Kassabian's MSJ, ruling that the failure to present an expert witness declaration was fatal to Roman's opposition.

On June 6, 2013, the trial court entered a judgment of dismissal in favor of Dr. Kim based on Roman's vexatious litigant status and his failure to post a bond. On the same date, the court entered summary judgment in favor of Dr. Kassabian. On June 25, 2013, the court entered summary judgment in favor of the Medical Center.

Roman filed a timely notice of appeal.[3]

## DISCUSSION

### I. The Judgment in Favor of the Medical Center

Roman contends summary judgment in favor of the Medical Center must be reversed because the trial court erred in finding no liability on the hospital's apart. We disagree.

We begin by stating the long-settled rule of appellate law that the trial court's reason for granting summary judgment are not controlling because we review the correctness of the court's ruling, not its reasoning. (See, e.g., *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336, citing *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19.) Thus, if the trial court's decision to

---

[3] Roman filed requests in our court for an order to file new litigation by vexatious litigant on appeal. On August 6, 2013, the presiding administrative justice of our court granted Roman's request for a pre-filing order allowing him to pursue an appeal from the judgments.

6

grant the Medical Center's motion for summary judgment is correct under any ground asserted by the hospital's motion, then we will affirm the court's ruling. (*Ibid.*)

Here, the trial court granted the Medical Center's motion based on the hospital's statute of limitations defense. The Medical Center's motion established that Roman's action against the hospital was time-barred under Code of Civil Procedure section 340.5 because Roman knew of his injury — suffering unnecessary extreme pain during the fiducial implant procedure — and its cause — "no anesthesia" — in March 2011, but did not file suit against the hospital until May 2012, more than one year later. Roman's opening brief on appeal contains no discussion of the statute of limitations defense as to the Medical Center. Thus, he has failed to show that summary judgment in favor of the Medical Center must be reversed.

Further, the trial court properly granted the Medical Center's summary judgment motion based upon the hospital's showing that Dr. Kim was not its agent. The evidence demonstrated that Dr. Kim was not the Medical Center's agent. The evidence showed Dr. Kim was not an employee of the hospital, but rather, had been extended to treat patients at the hospital. The Medical Center's evidence also established that no statement or conduct by it led Roman to believe that Dr. Kim was the Medical Center's agent. Roman signed a "Conditions of Registration" form when he first met Dr. Kim, and that form expressly advised Roman that Dr. Kim was not the Medical Center's agent. Additionally, the fiducial implant procedure giving rise to Roman's complaint was not done at the Medical Center.

Roman's only response on appeal to the agency issue is an argument that the trial court erred by denying his request to continue the Medical Center's motion so that he could obtain a copy of an unspecified agreement between Dr. Kim and the Medical Center. We see no error. Generally, the power to determine when a continuance should be granted is within the discretion of the trial court, and there is no right to a continuance as a matter of law. (*O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241, 251, disapproved on another ground in *Flanagan v. Flanagan* (2002) 27 Cal.4th 766.) However, in the context of a motion for summary judgment, Code of Civil Procedure section 437c,

7

subdivision (h), mandates a continuance on a good faith showing by affidavit that a continuance is need to obtain facts essential to the opposition to the motion. (*O'Laskey, supra,* 224 Cal.App.4th at p. 251.) That said, an opposing party's affidavit that states only in conclusory terms that more discovery remains to be completed is insufficient to mandate a continuance. (*Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 548.) Further, an affidavit that does not offer any explanation as to why discovery was not conducted earlier fails to satisfy the mandatory continuance procedure prescribed by Code of Civil Procedure section 437c, subdivision (h). (*Danieley v. Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 127.) Roman's declarations in support of his request for a continuance were not sufficient to mandate a continuance and do not otherwise show that the trial court abused its discretion in denying the request for a continuance. Roman filed his action in May 2012; the trial court did not hear the Medical Center's motion until May 2013. Roman offered no explanation as to why he could not have sought "the agreement" from the Medical Center during the full year that his case was pending.

Finally, even if there were an agency relationship between Dr. Kim and the hospital, the summary judgment motion was still properly granted. The Medical Center's motion established by expert declaration that Dr. Kim's medical treatment did not breach the standard of care for a *radiation oncologist* insofar as her duty of care related to Roman's alleged injury of extreme pain attendant with the surgical procedure to place fiducials in his prostate. It was Dr. Kassabian who performed the surgical procedure to place the fiducials in Roman's prostate, not Dr. Kim, who is not a surgeon. Even accepting as true the allegations in Roman's complaint that Dr. Kim was present during the procedure and giving directions to Dr. Kassabian as to where to place the fiducials, Roman fails to show any error because there is no showing that Dr. Kim's directions to Dr. Kassabian were deficient. This would require expert evidence; Roman did not present any expert evidence. In short, Roman failed to present evidence to create any dispute on his claim that the improper placement of the fiducials resulted from Dr. Kim's misdirection.

8

**II.     The Judgment in Favor of Dr. Kim**

Roman contends the judgment in favor of Dr. Kim must be reversed because the trial court erred in finding that he is a vexatious litigant.  We agree.

*The Vexatious Litigant Statutes*

Code of Civil Procedure section 391 sets forth the definitions applicable to the vexatious litigation statutes.  As relevant for purposes of Roman's current appeal, Code of Civil Procedure section 391 reads:

> "(a)  'Litigation' means any civil action or proceeding, commenced, maintained or pending in any state or federal court.
>
> "(b)  'Vexatious litigant' means a person who does any of the following:
>
> "(1)  In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been . . . *finally determined* adversely to the person  . . . ."  (Italics added.)

Code of Civil Procedure section 391.1 sets forth the relief available to a party who becomes involved in "litigation" by a "vexatious litigant."  The section reads:

> "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security . . . . The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he or she will prevail in the litigation against the moving defendant."

Code of Civil Procedure section 391.4 provides:

> "When security that has been ordered furnished is not furnished as ordered, the litigation shall be dismissed as to the defendant for whose benefit it was ordered furnished."

9

***The Court's Vexatious Litigant Finding***

The trial court found that the following five civil actions or proceedings, were adversely decided against Roman:

1. *Roman v. Kotoyan*, L.A. Super. Ct., 2009, No. BS118557. A petition for a civil harassment temporary restraining order. The case was resolved adversely to Roman when his petition was denied by the trial court on February 9, 2009.

2. *Roman v. Jefferson at Hollywood LP*, L.A. Fed. Dist. Ct., No. 2:11-cv-03155-RGK. A federal court complaint seeking damages for discrimination in housing under the Fair Housing Act. The case was dismissed following an order granting defendant's motion to dismiss for failure to state a cause of action.

3. *Roman v. Jefferson at Hollywood LP* (9th Cir. Oct. 30, 2012) 495 Fed.Appx. 804. Appeal affirming the federal district court dismissal in *Roman v. Jefferson at Hollywood LP*.

4. *Accusation of Roman*, Cal. Supreme Court, Nov. 2, 2011, No. S197691. Roman filed a petition in the Supreme Court involving accusations against the State Bar of California and an attorney member of the Bar. The Supreme Court denied the petition on December 14, 2011.

5. *Roman v. Los Angeles County Dept. of Social Services et al.*, L.A. Fed Dist Ct., No. CV 12-00437 PSG (SHX). The case was resolved adversely to Roman when the court granted defendants' motion for summary judgment on March 12, 2013.

*Analysis*

We agree with Roman that not all five of the actions identified above should have been found to have been "finally determined" adverse to him at the time of the trial court's vexatious finding on April 11, 2013. (See *Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 993 [the language "final determination" as used in Code of Civil Procedure section 391 means a judgment or other final disposition with respect to which "all avenues for direct review have been exhausted."]. Roman accurately informs us that his petition for writ of certiorari in the United States Supreme Court in *Roman v. Jefferson at Hollywood LP* was still pending on April 11, 2013 (No. 12-9178), as was his

appeal in the Ninth Circuit Court of Appeals in *Roman v. Los Angeles County Dept. of Social Services et al.* (No. 13-55480).

To avoid reversal of the trial court's vexatious litigant finding, Dr. Kim argues that, regardless of whether or not the matters noted by Roman were in fact still subject to direct review on the date that the court rendered its finding, "Roman cannot demonstrate anything more than harmless error by the trial court as [those] matters have since been finally determined and [he] has suffered additional adverse decisions since the [order]."[4] According to Dr. Kim's reasoning: "In sum, there are [today eight] matters that can be used to support the trial court's determination that Roman was a vexatious litigant . . . that have been decided adversely to him in the past seven years." In addition, Dr. Kim argues that a party's status as a vexatious litigant "can be determined for the first instance on appeal." Dr. Kim cites *In re R.H.* (2009) 170 Cal.App.4th 678, 690 in support of this latter argument.

We cannot accept Dr. Kim's argument that events which occur after an erroneous ruling *which is judgment-determinative* may be considered in examining whether the ruling was harmless to the judgment. What Dr. Kim is truly arguing on appeal comes down to this proposition: "If my vexatious litigant motion was ruled upon *today*, then the trial court would grant it *today*." That is not the same as this proposition: "The trial court's erroneous granting of my vexatious litigant motion *yesterday* did not have a contributing effect on the judgment that was entered in my favor *yesterday*, and, thus, may be deemed harmless to the judgment." Inasmuch as the erroneous vexatious litigant ruling in Roman's current case was judgment-determinative, we cannot deem the ruling to have been harmless to the judgment. We understand the common-sense reasoning in Dr. Kim's proposition that there may be an *inevitability in outcome* involved in Roman's current case insofar as the vexatious litigant issue is concerned, but this does not mean

---

**4**    Roman's petition for writ of certiorari in No. 12-9178 was denied by the United States Supreme Court on May 13, 2013. Roman's appeal in No. 13-55480 was calendared for oral argument on June 1, 2015. We take judicial notice that the Ninth Circuit Court of Appeals affirmed the judgment against Roman in No. 13-55480 on June 23, 2015.

11

that the trial court's erroneous granting of the doctor's vexatious litigant motion may be deemed harmless to the judgment already entered.

*In re R.H.*, *supra*, 170 Cal.App.4th 678 does not persuade us to reach a different conclusion. The rule to be drawn from *In re R.H.* is that the court of appeal may itself rule that a party is a vexatious litigant, thus requiring the party to obtain a pre-filing order before he or she may litigate an appeal or any further proceeding in any state court. The authority of an appellate court to declare a party vexatious litigant has no bearing on the harmless error issue raised by Dr. Kim on appeal. We do not understand Dr. Kim to be making a motion in our court for an order declaring Roman to be a vexatious litigant; if she were, her motion is not supported by a proper evidentiary showing in our court. As noted above, Dr. Kim argues we should find that the judgment of dismissal in her favor is not *prejudicial* error, a proposition which we have rejected for the reasons stated above.

For the reasons discussed, the judgment in favor of Dr. Kim must be reversed. Reversal on Roman's current appeal does not foreclose the vexatious litigant issue from being raised again "at any time until final judgment is entered" (Code Civ. Proc., § 391.1) upon a proper showing of predicate facts by Dr. Kim. Further, reversal here does not foreclose the trial court from addressing Dr. Kim's motion for summary judgment, which was put aside after the trial court's vexatious litigant ruling.

## III. The Judgment in Favor of Dr. Kassabian

Roman contends the judgment in favor of Dr. Kassabian must be reversed because his opposition based on the doctrine of res ipsa locquitur was sufficient to show the existence of triable issues of fact to defeat the doctor's summary judgment motion. We find that the record discloses a triable issue of material fact as to Roman's cause of action for medical malpractice on whether he received anesthesia. However, we find no disputed facts as to his cause of action for failure to obtain an informed consent. We reverse the trial court's order granting Dr. Kassabian's motion for summary judgment, and remand the case with directions to the court to enter a new and different denying the doctor's the motion. However, we remand with the proviso that the doctor's

12

motion for summary adjudication of issues as to Roman's cause of action for failure to obtain an informed consent should be granted.

### 1. The Cause of Action for Medical Malpractice

The usual rules in a medical malpractice case are that the plaintiff "must present expert witness testimony to prove a breach of the standard of care," and must also present such testimony to prove that the defendant doctor's breach of the standard of care caused, "within a reasonable medical probability," the plaintiff's injury. (See, e.g., *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 509.) The exception to the usual rules is that expert testimony is not required where common knowledge and observation among laypersons would be sufficient to support a finding that "'the consequences of the professional treatment were not such as ordinarily would have followed if due care had been exercised.'" (See *Bardessono v. Michels* (1970) 3 Cal.3d 780, 789 [listing examples of illustrative cases, including, e.g., clamp left in a patient's abdomen during surgery; shoulder injury during an appendectomy].)

Dr. Kassabian's motion placed evidence before the court, predominantly the expert declaration of David Josephson, M.D., challenging the alleged violation of the standard of care, and the element of causation. Dr. Josephson's declaration implicitly accepted that local anesthesia is the standard of care for the procedure involving the placement of fiducials, but, factually, stated that Dr. Kassabian met this standard in that he *did* provide local anesthesia during the procedure performed on Roman. Dr. Josephson explained that, even with local anesthesia, a patient may feel discomfort and pain from the type of procedure performed by Dr. Kassabian. As to Roman's claims about the misplacement of the fiducials, Dr. Josephson opined that Dr. Kassabian "appropriately placed the fiducials," and that "[t]he placement was confirmed by ultrasound." Further, Dr. Josephson stated that Roman "did not suffer any adverse effects from the placement of the gold fiducials by Dr. Kassabian."

13

Given the expert evidence submitted by Dr. Kassabian, and Roman's failure to present any expert evidence, the issue before our court is whether Roman's generalized testimony that he received "no anesthesia" before the procedure by Dr. Kassabian, and that Roman "felt everything" during the procedure and experienced "excruciating pain," was sufficient to survive the motion for summary judgment by creating a triable issue of fact as to whether Dr. Kassabian did provide anesthesia to Roman during the procedure. Because we cannot assess Roman's credibility in the context of a summary judgment motion (see, e.g., *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 840), and because Roman's declaration in opposition to Dr. Kassabian's testimony must be "liberally construed" (see, e.g., *Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107), we find the trial court erred in granting summary judgment on the ground that Roman did not present expert evidence in opposition to the motion. There remains a disputed issue of fact about whether Roman received any anesthesia.[5]

### 2. The Cause of Action for Failure to Obtain Informed Consent

To prevail at trial on his cause of action for failure to obtain informed consent, Roman must prove: (1) that Dr. Kassabian performed the procedure to place fudicials in Roman's prostate; (2) that Roman did not give informed consent for the procedure; (3) that a reasonable person in Roman's position would not have agreed to the procedure if he had been fully informed about the results or risks of the procedure; and (4) that Roman was harmed by a result or risk that Dr. Kassabian did not explain but should have explained before the procedure was performed. (See CACI No. 533.) Further, the jury would be instructed on the concept of informed consent with language along the lines of the following:

---

[5] At trial, of course, the burden will be on Roman to present expert evidence showing that the standard of care required local anesthesia for the fiducial implant procedure performed by Dr. Kassabian. This will be in addition to Roman's evidence that did not receive anesthesia. Dr. Kassabian's implicit acceptance of the standard of care for purposes of his motion is not binding at trial. If Roman does not present expert testimony on the subject of anesthesia protocols, then his action will be subject to a non-suit motion.

14

" . . . A patient gives an 'informed consent' only after his doctor has adequately explained the proposed . . . procedure. [¶] . . . A doctor *must give the patient as much information as he needs to make an informed decision*, including *any risk that a reasonable person would consider important in deciding to have the proposed . . . procedure . . . .* A doctor is not required to explain minor risks that are not likely to occur." (CACI No. 532, italics added.)

The jury instructions demonstrate that a patient's cause of action for failure to obtain informed consent is not measured by medical expertise concerning the standard of care to be practiced. Rather, it is measured by the amount of information concerning the risks of a procedure "that a reasonable person would consider important" in deciding whether to have that procedure. As stated in *Truman v. Thomas* (1980) 27 Cal.3d 285: "The scope of a physician's duty to disclose is set by law rather than by the custom of physicians." (*Id*. at p. 291, fn. 3.) In other words, "the touchstone of the physician's duty of disclosure is the patient's need for 'adequate information to enable an intelligent choice,' a peculiarly fact-bound assessment which juries are especially well-suited to make." (*Arato v. Avedon* (1993) 5 Cal.4th 1172, 1186.)

The undisputed evidence in the record shows that Roman signed a typed, 10-page "Informed Consent" with Dr. Kim to undergo the CyberKnife treatment. This document explained:

"You will . . . have . . . a procedure to place 4 small gold seeds into the prostate. This procedure is commonly done in patients receiving standard external beam radiation for prostate cancer and is not an experimental procedure. These gold markers will be used to determine the location of the prostate during the CyberKnife treatment. An ultrasound probe is placed into the rectum and needles containing the gold seeds are guided into the prostate and then the seeds are deposited. . . .

"[¶] . . . [¶]

15

"You may have side effects while on this study. Most of these are listed here, but there may be other side effects that we cannot predict. Side effects will vary from person to person. Everyone taking part in the study will be carefully watched for any side effects. However, doctors do not know all the side effects that may happen. Side effects may be mild or very serious. Your health care team may give you medications to help lesson some of the side effects. Many side effects go away soon after your radiation therapy. In some cases, side effects may be very serious, long-lasting, or may never go away. You should talk with your study doctor about any side effects that you may have while taking part in the study.

"[¶]

"The . . . placement of the gold markers may cause some discomfort as these procedures require the use of small needles inserted into the prostate. Discomfort from these procedures will be minimized by the use of local numbing medications (anesthetics) and you may receive [an] intravenous injection of small doses of medications to make you drowsy (sedatives). It is likely that a patient undergoing this procedure may experience discomfort from placement of the needles and minor bleeding because of injury to small blood vessels in the path of the needle. The majority of cases do not require treatment and bleeding resolves spontaneously. Other possible side effects which are rear include infection requiring antibiotic treatment and significant bleeding requiring a transfusion and/or surgery."

We find the trial court did not err in summarily resolving Roman's cause of action against Dr. Kassabian for failure to obtain an informed consent. The undisputed evidence in the record shows that Roman was informed that discomfort was a possible side effect of the procedure to place the fiducials into his prostate. Roman's argument that he was not informed that he would receive no anesthesia is merely an element of his cause of action for medical malpractice based on his claim that he did not receive anesthesia.

16

In other words, Roman essentially argues that he should have been informed that he would suffer medical malpractice so that he could have made an informed decision. None of the authorities discussed in Roman's briefs support the proposition that a doctor has a duty to inform a patient that he is going to suffer medical malpractice. Where alleged malpractice occurs, the patient's remedy is a cause of action for medical practice.

## DISPOSITION

The judgment entered in favor of the Medical Center on June 25, 2013 is affirmed. The judgments entered on June 6, 2013 in favor of Dr. Kim and Dr. Kassabian are reversed, and the case is remanded to the trial court for further proceedings in accord with this opinion. Roman's request on appeal for judicial notice of a proceeding before the California Medical Board involving Dr. Kassabian is denied as irrelevant to the issues presented by Roman's current appeal. Each party to bear its own costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.


17