Filed 8/30/24  In re J.C. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.C.,<br><br>Defendant and Appellant. | F087837<br><br>(Super. Ct. No. 21CEJ300222-2)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from orders of the Superior Court of Fresno County.  Mary Dolas, Judge.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P. J., Snauffer, J. and DeSantos, J.

R.C. (father) appeals from the juvenile court's orders (1) summarily denying his Welfare and Institutions Code[1] section 388 petition requesting the juvenile court place his three-year-old son, J.C. (son), with him on family maintenance or grant him reunification services, and (2) terminating his parental rights at a subsequently held section 366.26 hearing. Father's sole contention is that the juvenile court erred by summarily denying his section 388 petition. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Petition and Detention*

On May 5, 2023, law enforcement placed a section 300 hold on two-year-old son and his 10-year-old half sister[2] after mother, E.L. (mother), was found nonresponsive in her bedroom and subsequently was determined to be deceased. Father's whereabouts were unknown. The children were placed with maternal grandmother, with whom mother and the children were living. Thereafter, the Fresno County Department of Social Services (department) filed a petition pursuant to section 300, subdivision (g), alleging mother left son without any provision for support or care. The department submitted a parent search for father.

At the May 10, 2023 detention hearing, the juvenile court found a prima facie case had been established and ordered son detained. The court further ordered that father, whose whereabouts were still unknown, receive reasonable supervised visitation, which the department had discretion to schedule when father contacted the department.

### *Jurisdiction and Disposition*

In its jurisdiction and disposition report, the department recommended the petition's allegation be found true and that father, whose whereabouts were still

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     While son's half sister is part of the same dependency case, she is not part of this appeal. Therefore, we generally omit facts related to her.

unknown, not be provided placement or reunification services. The family had a prior dependency case, which started in June 2021 when son was six months old. The juvenile court's findings included mother's substance abuse that negatively affected her parenting ability, and domestic violence between father and mother. Mother and father were ordered to participate in reunification services. Father's services included parenting classes, substance abuse and mental health assessments and any recommended treatment, a domestic violence index and any recommended treatment, and random drug testing. Dependency was terminated in August 2022, and mother was granted sole legal and physical custody of the children.

Father had a lengthy criminal history that consisted of several felonies, including robbery and domestic violence. The department opined there would be a substantial risk to son's physical health, safety, protection, and emotional well-being if he were placed in father's care, and there was no reasonable means by which he could be protected if placed with father. The department, however, had been unable to assess father as his whereabouts were unknown. Maternal grandmother, who had a five-year restraining order against father, reported father was violent, used to physically abuse mother, and had many felonies. She said son did not have a relationship with him.

Father appeared at the June 14, 2023 jurisdiction/disposition hearing and was appointed counsel. The hearing was continued to July 19, 2023.

In an addendum report for that hearing, the department recommended that father not be provided placement under section 361.2, subdivision (a) or reunification services pursuant to section 361.5, subdivisions (b)(10) (failure to reunify) and (12) (violent felony). Father told the department he lived in a rental home in San Jose and was employed at a rental car agency. Father wanted to reunify with son and take custody of him. Father admitted he was ordered family reunification services in the past, but he did not attend services or programs because he was unhoused. Father had an in-person supervised visit with son on June 28, 2023. Father interacted with son by talking and

3.

playing with him. No issues or concerns were noted during the visit. One-hour weekly visits were scheduled for father.

A family reunification panel met to determine the appropriateness of offering father reunification services. Father, who failed to reunify with son in the prior dependency case, now said he did not participate in services in that case because he was doing services through parole and he "was not going to do double services." While father reported participating in domestic violence services and drug treatment, he did not provide the department with documentation showing he completed those services. Additionally, although he had been ordered supervised visits when mother was awarded custody, he did not visit son and had not seen him for over a year. He claimed he did not know mother's whereabouts, but later stated she always called him to ask for money. The department noted it was reported (by an unspecified source) that father did not want to pay the visitation agency fees to visit son. The panel determined father met the bypass criteria under section 361.5, subdivision (b)(10) and (12).

The department assessed whether it would be in son's best interest for father to receive reunification services. Overall, father had not ameliorated the problems that led to the initial removal, had not participated in services, and did not have a relationship with son. Due to son's young age, he required a safe, stable, and sober care provider. It did not appear father could meet those needs as he had an extensive criminal history, which included violent crimes, and had been in and out of prison. Maternal grandparents, on the other hand, had been meeting son's needs. The panel determined it would not be in son's best interest for father to receive services.

Father did not appear at the July 19, 2023 hearing, which the juvenile court continued to July 31, 2023. At the July 31, 2023 jurisdiction/disposition hearing, which father attended, testimony was received, and the court found the petition's allegation true. The court continued the disposition hearing to August 16, 2023. At that hearing, the court found son was a person described under section 300, subdivision (g), and there was

4.

clear and convincing evidence that placing son with father would be detrimental to his safety, protection, and physical and emotional well-being.  The court ordered a bypass of reunification services after finding by clear and convincing evidence that section 361.5, subdivision (b)(12) (violent felony) applied.  The court granted father a minimum of one visit per month.  A section 366.26 hearing was set for December 13, 2023.

Father filed a petition for an extraordinary writ, which we denied in *R.C. v. Superior Court* (Oct. 27, 2023, F086736 [nonpub. opn.]).  We affirmed the juvenile court's decision not to place son with father as substantial evidence supported the court's finding that it would be detrimental to place son with him.  We also affirmed the juvenile court's decision to bypass reunification services for father pursuant to section 361.5, subdivision (b)(12), as the bypass provision applied and the court did not abuse its discretion in finding that providing reunification services was not in son's best interest due to son's tender age and need for stability, father's limited bond with him, and father's histories of being in and out of prison and of domestic violence.

### Father's Section 388 Petitions and the Section 366.26 Hearing

Father filed three section 388 modification petitions on August 29, 2023, in which he asked the juvenile court to increase his visitation time, order counseling and reunification services, and provide him with a different attorney.  On August 30, 2023, the court denied the petitions, finding they did not state new evidence or changed circumstances, did not promote son's best interest, and if father wanted a different attorney, he should make the request at the November 1, 2023 interim review hearing.

Father filed another section 388 modification petition on October 20, 2023, asking for more visitation time and communication with son.  The juvenile court denied the petition without a hearing on November 2, 2023, finding it did not state new evidence or changed circumstances, and the current order, which set a minimum number of supervised visits, permitted additional visits if they could be accommodated.

5.

At a November 1, 2023 interim review hearing, the juvenile court increased father's visits to either two visits or one two-hour visit per month. At a November 27, 2023 interim review hearing, it was confirmed that father had a two-hour visit on November 20, 2023, and future visits were scheduled.

In its report prepared for the section 366.26 hearing, the department recommended termination of parental rights and a permanent plan of adoption. The department recounted father's relationship with son. Son lived with both parents from his birth until he was five months old, when mother moved back to California. Son and his half sister were taken into protective custody in June 2021 and remained in out-of-home care with maternal grandmother. Father did not contact the department until February 2022, when the juvenile court ordered him to attend weekly two-hour visits, and to complete reunification services; father, however, did not complete the required classes. When son reunified with mother and dependency was dismissed in August 2022, father was ordered to receive visitation through a third-party agency. Father, however, did not contact the visitation center to set up visits as he did not want to pay the monitoring fees. Thus, father did not have contact with son from July 2022 until when son entered foster care in May 2023, with his first visit being on June 28, 2023.

The department documented father's visits. At the first visit in June 2023, son initially did not acknowledge or respond to father, but son hugged father at the end of the visit at father's request. At first, father was appropriate with son. While he typically played with son, at a July visit, he was observed sitting on the couch and watching son play instead of engaging with him. Father praised son when he followed directions. At an August 9, 2023 visit, father smelled heavily of marijuana and appeared to have high energy during the visit. The following day, father admitted to the social worker that he was under the influence, but he claimed it was legal and he had a medical marijuana card. The social worker reminded father he was not to be under the influence of drugs or alcohol.

6.

In following visits, son often ignored father and played on his own. At one visit, father complained about the social worker rather than interact with son. Father attempted to engage son, but son ignored him and crawled under the table. The social worker described visits as often loud, unstructured, and filled with incessant calling of son's name when son did not respond to father. At one visit, father wanted son to try on a jacket he brought, and when son did not respond to his name, father threw the jacket on son's head. At another visit, father tapped a bag of chips on son's face after son said he did not want to eat chips. Son took one chip and crawled under the table. When visits ended, son would not say goodbye to father and often walked out of the visitation room without looking back.

The department addressed whether the benefit of adoption outweighed the harm of severing son's relationship with father. The department noted that while father was visiting consistently, he had a history of domestic violence with mother, which led to the protective order being issued against him that protected mother, maternal grandmother, and son's half sister. Father had several violent felonies and was not able to offer stability or protection for son. While father had the opportunity to maintain a relationship with son when the first dependency case closed in 2022, he chose not to pursue visitation as he did not want to pay the fees, which indicated he was not invested or interested in a relationship with son. The department was concerned that father's inability to demonstrate responsible behaviors, as shown by his previous violent offenses, which included robbery and domestic violence, put him at risk of being inconsistent with visits, should he find himself in trouble with the law.

Maternal grandmother was willing to adopt. The department assessed son as being generally adoptable due to his young age and being developmentally on target, and specifically adoptable because maternal grandmother wished to adopt him.

At the December 13, 2023 section 366.26 hearing, father requested a contested hearing, which the juvenile court set for February 28, 2024, as father requested a later

hearing date because he was having a medical procedure. Father requested weekly visits, but the court declined the request as he was able to have additional visits under the current order.

Father filed a section 388 modification petition on February 16, 2024, in which he asked the juvenile court to either place son with him on a plan of family maintenance or order family reunification services. As changed circumstances, father asserted: (1) he had several in-person visits with son; (2) he completed two parenting programs—a 24-lesson class and a month-long twice weekly class; (3) he completed a three-lesson grief and loss class and a 12-lesson relationship violence course; and (4) he had been working with Gardner Health Services for additional support and had additional family support available. Father asserted services were in son's best interest because son enjoyed visits with him, and he could "provide a safe, stable home environment and meet all [of] his emotional, and material needs as I have stable housing, income, and family support."

Father provided a letter and certificates of completion in support of the petition. In a January 24, 2024 letter from a court care coordinator at Gardner Health Services, the coordinator confirmed father reached out to the coordinator to register in parenting classes and services offered to parents with children between zero and five years old. The coordinator reported that father: (1) participated in "Triple P" parenting classes and received a certificate of completion on October 3, 2023; (2) was referred to a six-week workshop entitled " 'Role of Men' " that father reported attending; (3) received support from the First 5 court care coordinator and a parent advocate; and (4) reported being fully engaged in church. The following certificates were attached: (1) an October 3, 2023 "Triple P" certificate recognizing father's attendance at "Selected Seminars Triple P [¶] Triple P—Positive Parenting Program"; (2) an August 12, 2023 certificate of completion of a 24-lesson "Parenting 101" course from Open Path Online Wellness Solutions; (3) an August 12, 2023 certification of completion of a three lesson "Grief & Loss" course from

8.

Open Path Online Wellness Solutions; and (4) an October 11, 2022 certificate of completion of a 12-lesson "Relationship Violence" course from Open Path Online Wellness Solutions.

The juvenile court denied father's modification petition without a hearing on February 23, 2024, because the request did not state new evidence or a change of circumstances.

In an addendum report for the section 366.26 hearing, the department continued to recommend termination of parental rights and adoption as the permanent plan. The department reported on father's visits since the last report. The department acknowledged father's efforts and commitment to attending scheduled visits. He had not missed a single visit and came prepared with gifts and snacks for son. According to the notes of the December 2023 and January 2024 visits, son appeared to allow father to hug him on some occasions and did not protest when father hugged and kissed him. Son also was observed to say, " 'I love you' " when father said, " 'I love you,' " but the social worker noted this may have been due to father praising him when he repeated father's phrases. The social worker also noted that during the January visit, son only responded, " 'okay,' " when father told son, " 'I miss you,' " and when father attempted to kiss him at the end of the visit, son pushed his face away and said, " 'go away.' "

The department believed son did not look to father as a parent who was meeting his daily needs. While son arrived at visits excited to play with toys in the room and was curious about the gifts father brought, he appeared to treat the visits as another scheduled activity and left the visits with no anxiety. Son did not say goodbye to father at the end of visits and did not show any signs of distress when he returned to his care provider. Father did not appear to demonstrate the ability to engage with son, did not use visits as an opportunity to teach son, and was unaware of son's developmental needs.

The department noted father stated on several occasions that it was not his fault son was in foster care, but he took no responsibility for his failure to take advantage of

reunification services that were offered to him in February 2022, or his failure to seek out visits when he was given visitation rights. While father asserted maternal grandmother was unfit to care for the children as he blamed her for them being in foster care, father shared with the social worker that he was aware of mother's drug use when they were living together, which he blamed on mother, and he did not take responsibility for the children being around mother when she was under the influence.

While father believed son needed to be returned to his care as the nonoffending parent, he had several domestic violence incidents with mother. Son's half sister recalled several times witnessing father punching mother while mother was holding son, and while father did not strike son, he could have harmed him when he struck mother. Father did not think of son's safety or the emotional impact witnessing domestic violence would have on him.

Although father had consistently visited son, father had not shown any behavioral changes and still did not accept responsibility for his part in why his family was involved with child welfare services. The department was concerned that if legal guardianship were ordered, father would not consistently visit as he admitted to not visiting son because he did not want to pay a third-party supervisory fee.

At the outset of the February 28, 2024 section 366.26 hearing, the juvenile court explained why it denied the section 388 petition without a hearing: "I believe the Court did that because the information attached was—it predated the time that services were terminated or weren't signed by the [department]. So I didn't find that there was a showing of any changed circumstances from the date that the services were terminated. In that, again, they—they predated, so there was not any new information."

Father and the social worker testified at the hearing. Father said he tried to visit son between August 2022 and May 2023. When asked what efforts he made to visit, father testified he and mother communicated regularly through phone calls and text messages, and he sent mother money and had things delivered through a grocery store.

10.

He could not visit mother's house due to the active restraining order and mother told him she could not let him see son, so he submitted court documents.

Father denied refusing to pay for supervised visits and claimed he tried everything he could to see son. He testified he went to the visitation center right after the first dependency case closed, but "belongings" were "taken from [him] there," and they told him his "visits [were] over with there" and not to come back. He claimed he asked for more visits, but the juvenile court told him he would have to "do the paperwork."

Father was receiving one two-hour supervised visit per month. Father claimed son would run to him when he saw him, son liked to play with him, and they practiced "A-B-Cs, 1-2-3s, [and] singing," looked at pictures, and talked. Father changed son's diapers and brought him food and clothing. Father asserted son liked to go under the table to get his attention. Father denied being under the influence of any substances during visits and denied consuming marijuana before attending the August 2023 visit. Father claimed son would shut down whenever father told him the visit was ending and son said, "no," when father said it was time to go home.

Social worker Sopheap Phang was assigned to the case in August 2023 and observed four visits. She testified that during each visit, son was "very reluctant" to approach father when son came into the room. Father was usually the one who approached son and greeted him. Typically, son would just smile at father and then turn his attention to the toys in the room and play by himself. While father attempted to engage son, son usually turned to father and smiled, but seldom responded. Generally, son would not respond to or look at father. Phang did not believe it would be detrimental to terminate parental rights, as father was a friendly visitor and while son was "very friendly" and responsive to anyone who came near him, son saw the visits as another scheduled activity, and he went home with no issues or signs of distress.

After hearing arguments of counsel, the juvenile court stated it reviewed the visitation portions of the July 11 and July 19, 2023 department reports that father's

11.

counsel asked it to judicially notice. It found by clear and convincing evidence that son was likely to be adopted. The court found father did not meet his burden of showing the beneficial parent/child relationship exception to adoption applied. The court acknowledged that father recently engaged in regular and consistent visitation, but he had not shown he had a strong, positive bond and relationship with son that would outweigh the security and sense of belonging son had in his relative placement and that relative placement could provide. While father improved their relationship, it appeared to be a friendly one and there was no evidence of a strong, positive bond, or a showing that severing the relationship would be detrimental to son. The court terminated parental rights and ordered adoption as son's permanent plan.

## DISCUSSION

Father only challenges the denial of his February 2024 section 388 petition. He contends the juvenile court abused its discretion in summarily denying the petition because he met his prima facie pleading burden to obtain a hearing on his request for reunification services. He asserts the court erred in finding that there were not changed circumstances, as when the court explained the reason for its denial at the section 366.26 hearing, it incorrectly stated that father's services had been terminated and the certificates attached to his section 388 petition predated the termination of services. Father argues the record instead shows he never received services and at least some of the certificates attached to his petition postdated the denial of services. He further asserts he sufficiently pled how reunification services would be in son's best interest.

### Standard of Review

We review the juvenile court's decision to summarily deny a section 388 petition without a hearing for abuse of discretion. (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1158.) " 'To show abuse of discretion, the appellant must demonstrate the juvenile court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a miscarriage of justice.' " (*In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 780.)

12.

Father complains about the juvenile court's stated reason for denying the petition. But " '[w]e uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." [Citation.] "It is judicial action and not judicial reasoning which is the subject of review …." ' [Citation.] We will not reverse for error unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result." (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 876; see *In re D.O.* (2016) 247 Cal.App.4th 166, 176–177.)

### Standard for Setting a Hearing on a Section 388 Petition

"Any parent … may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court … for a hearing to change, modify, or set aside any order of court previously made …." (§ 388, subd. (a)(1).) "Section 388 … gives the court two choices: (1) summarily deny the petition or (2) hold a hearing." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) Although a section 388 petition should be liberally construed in favor of granting a hearing to consider the request, a hearing is only required if the moving party makes a prima facie showing both of changed circumstances and that the proposed change would promote the best interest of the child. (See *In re Edward H.* (1996) 43 Cal.App.4th 584, 592–593.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) The juvenile court may consider the entire factual and procedural history of the case in deciding whether to grant a hearing on a petition under section 388. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

*Father Has Not Shown an Abuse of Discretion*

Father asserts the juvenile court's stated reason for denying the section 388 petition was incorrect because father never received reunification services in this case, and he completed some of the classes after the August 2024 disposition hearing. We need not decide whether the court erred in finding there was no prima facie showing of changed circumstances because father failed to make a prima facie showing that granting the section 388 petition and providing reunification services to him was in son's best interest.[3]

Parent and child share a fundamental interest in reuniting up to the point at which reunification efforts cease. (*In re R.H.* (2009) 170 Cal.App.4th 678, 697, disapproved on another ground in *John v. Superior Court* (2016) 63 Cal.4th 91, 98–100.) By the point of a section 366.26 hearing to select and implement a child's permanent plan, however, "the interests of the parent and [the] child have diverged." (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 254.) Therefore, after reunification efforts have terminated the court's focus shifts from family reunification toward promoting the child's needs for permanency and stability. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309.) This is a

---

[3] The department contends that because father was not ordered reunification services under section 361.5, subdivision (b)(12), as he was convicted of a violent felony, the juvenile court could only modify the order denying reunification services if there was clear and convincing evidence that services would be in son's best interest and it made the findings required to offer services at the disposition hearing, citing *In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157. That case, however, involved the bypass of services based on severe physical abuse under section 361.5, subdivision (b)(6)(A). We decline to extend the holding of *In re G.B.* to the bypass of services under section 361.5, subdivision (b)(12). California Rules of Court, rule 5.570(h)(1)(C), which applies to the conduct of hearings on section 388 petitions, provides that the petitioner must show by clear and convincing evidence that the proposed change is in the child's best interest only if services were not ordered under section 361.5, subdivision (b)(4), (5) or (6). The rule of court does not apply to the bypass of services under other provisions. In addition, under either standard, father has not shown it is in son's best interest for father to receive reunification services.

14.

difficult burden to meet when reunification services have been terminated or never ordered. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464.)[4] This is because, "[a]fter the termination of reunification services [or bypass of services], a parent's interest in the care, custody and companionship of the child is no longer paramount." (*Ibid.*) In fact, there is a rebuttable presumption continued foster care is in the child's best interest. (*Ibid.*) Such presumption applies with even greater strength when adoption is the permanent plan. (*Ibid.*) "A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

When father filed his section 388 petition, after the juvenile court ordered services bypassed in July 2023 and shortly before the section 366.26 hearing, son's interest in stability was the juvenile court's foremost concern, outweighing any interest in reunification. The prospect of allowing father reunification services to see if he would and could do what was required to regain custody would not have promoted stability for son, and thus would not have promoted his best interest. (*In re Angel B.*, *supra*, 97 Cal.App.4th at p. 464.)

Son only lived with father for the first five months of his life. After he was returned to mother's custody in August 2022, at 20 months old, father did not take the opportunity to visit although visits were ordered. By June 2023, when father first visited after this case began, father was a virtual stranger to son who was then two and a half years old. Since that time, father only had supervised visitation. Although father commendably attended visits consistently, the visitation notes show that son, who began

---

[4] Father emphasizes that the juvenile court incorrectly stated that his reunification services were terminated, rather than that they were never ordered. Given that son's interest in stability is the court's foremost concern regardless of whether reunification services are terminated or never ordered, this is a distinction without a difference.

to react positively toward father during his last three visits, did not appear bonded to father and separated easily from him. Son had resided with maternal grandmother, the prospective adoptive parent, for a far greater time than he lived with father. Granting father reunification services would only prolong son's adoption into a stable and loving home. The social worker noted that son was very close with maternal grandmother, who doted on him, and she was meeting son's needs.

Father's section 388 petition asserted granting the petition was in son's best interest because son enjoyed visits, father could provide a safe, stable home environment, and father could meet his emotional and material needs because he had stable housing, income, and family support. These allegations, however, are conclusory, and are not a factual showing that granting reunification services would promote son's best interest. (*In re Ramone R.* (2005) 132 Cal.App.4th 1339, 1348, 1349 ["allegations of her [section 388] petition were to be liberally construed, but conclusory claims are insufficient to require a hearing"].) Father's petition offered no evidence of the nature of his bond with son.

On the issue of best interest, father relies on three cases where the appellate court found the juvenile court abused its discretion by denying a section 388 petition without a hearing. Every case must be decided on its own unique facts, and the cited cases are distinguishable and not controlling. In *In re Aljamie D.* (2000) 84 Cal.App.4th 424, the issue was whether the mother's section 388 petition showed that a modification of the placement order would be in the children's best interests. (*Id*. at p. 432.) The department conceded the petition stated a change of circumstance as the mother had completed classes and tested clean for two years since the initial finding she was arrested under the influence of drugs. (*Ibid*.) The appellate court held the mother's petition showed the children's best interests potentially would be advanced by her proposed 60-day visit and eventual change of the placement order, as the children, who were nine and 11 years old, repeatedly made clear their first choice was to live with their mother. (*Ibid*.)

16.

In contrast to son, who was only three years old, the children in *Aljamie D.* were older, fully cognizant of their desires, and repeatedly expressed they wished to live with their mother. Moreover, adoption was not being considered as an option in that case. (*In re Aljamie D.*, *supra*, 84 Cal.App.4th at p. 429.) Here, son, who was too young to give a meaningful statement on his desire, was, by all accounts, stable and doing well in a home where he was deemed likely to enjoy the permanence of adoption.

The other two cases, *In re Josiah S.* (2002) 102 Cal.App.4th 403 and *In re Hashem H.* (1996) 45 Cal.App.4th 1791, address only whether the mothers' section 388 petitions adequately alleged changed circumstances, not whether they adequately alleged the children's best interests. In *Josiah S.*, the mother submitted medical reports with her postpermanency section 388 petition that called into question the basis for jurisdiction, and since the appellate court was remanding the case so a contested postpermanency review hearing could be held, the appellate court set aside the summary denial of the section 388 petition. (*Josiah S.*, at pp. 419–420.) In *Hashem H.*, the appellate court concluded the mother made an adequate prima facie showing of changed circumstances where she alleged she completed individual therapy "which was so successful that her therapist recommended Hashem be returned to her custody." (*Hashem H.*, at p. 1799.) Under those circumstances the petition "made an adequate showing that she could demonstrate at a hearing that she had overcome her problems through conscientious and successful individual and conjoint counseling over a lengthy period of time," and "that she maintained a consistent relationship with her son." (*Id*. at p. 1800.)

In contrast to these cases, father is not challenging jurisdiction, and the evidence submitted with the petition does not show that he has overcome the problems that resulted in him being unable to obtain custody of son. The main obstacle to father receiving custody or services was his lack of bond with son. Father asserts son enjoys visits, but son is not bonded to him. Since the current focus is on permanency, that son

17.

enjoys visits is insufficient to show that providing father with reunification services would be in son's best interest.

In sum, given "the entire factual and procedural history of the case," we cannot find that the juvenile court abused its discretion in denying a hearing, as father's petition did not make a prima facie case that the requested relief was in son's best interest. (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189.)

## <u>**DISPOSITION**</u>

The juvenile court's orders, including the order summarily denying the section 388 petition, are affirmed.